**W. E. GRACE MANUFACTURING COMPANY, Petitioner,**

v.

**Sol LEVIN, Trustee, Respondent.**

**No. B–3741.**

Supreme Court of Texas.

Jan. 30, 1974.

Rehearing Denied March 6, 1974.

Garrett & Ledbetter, George Payne, John C. LaFave, Houston, for petitioners.

J. Leonard Gotsdiner and Ranseler O. Wyatt, Houston, for respondent.

Akin, Gump, Strauss, Hauer & Feld,
Henry D. Akin, Dallas, for petitioner.

Eades & Eades, Eric Eades, Jr., Dallas, for respondent.

WALKER, Justice.

This is a usury case. The suit was brought by the creditor, W. E. Grace Manufacturing Company, our petitioner, against the debtor, Texas Tool Traders, and its president, William B. Mims, Jr., to recover the balance alleged to be owing on certain indebtedness plus actual and exemplary damages for fraud. Texas Tool and Mims filed a counterclaim for statutory penalties claimed to be due because of usurious interest contracted for, charged and received by petitioner. Texas Tool was adjudicated a bankrupt while the suit was pending. Sol Levin, its trustee in bankruptcy and respondent here, was substituted as a party and prosecuted the counterclaim.

The trial court rendered judgment on the verdict awarding petitioner the balance owing on the indebtedness plus actual and exemplary damages and denying respondent a recovery on the counterclaim. The Court of Civil Appeals concluded that the parties had contracted for and received interest in excess of double the amount allowed by Arts. 5069–1.01 to 5069–1.06, Vernon's Ann.Tex.Civ.St. The judgment of the trial court in so far as it denied a recovery on the counterclaim was accordingly reversed, and judgment was rendered in favor of respondent for $21,250.00, which the intermediate court determined was: (1) double the amount contracted for and received as interest, plus (2) the amount paid on principal, plus (3) $2,500.00 determined by the trial court, in accordance with an agreement of the parties, to be a reasonable attorney's fee. Texas Tool Traders v. W. E. Grace Mfg. Co., Tex.Civ.App., 488 S.W.2d 498. The recovery in favor of petitioner for the balance owing on the indebtedness plus damages was not disturbed, is no longer involved in the appeal, and will not be noticed further. It is our opinion: (1) that on the present record it cannot be said that petitioner contracted for usurious interest, and (2) that petitioner received

usurious interest but not in excess of double the amount allowed by law. The judgment of the Court of Civil Appeals will be modified and affirmed.

The facts of the case are practically undisputed. Both petitioner and Texas Tool were engaged in the machinery business and had traded with each other for several years. Texas Tool owed petitioner $10,000.-00 evidenced by a note for that amount dated November 14, 1969, due 90 days after date and bearing interest from maturity at the rate of 10% per annum. There is no contention that this loan was usurious. On or about January 17, 1970, Texas Tool sold two machines called Bridgeport Mills to Lockheed Missiles & Space Company in California for $25,000.00. The mills were in a warehouse and could not be withdrawn except on payment of $18,000.00. Although already indebted to petitioner on the $10,-000.00 note, Texas Tool persuaded petitioner to advance the $18,000.00 needed to obtain the two mills from the warehouse. Arrangements were made for Lockheed to make its check payable to Texas Tool and petitioner's president, W. E. Grace. Petitioner then issued its check for the $18,-000.00 loan to Texas Tool, and the parties signed the following agreement:

"Texas Tool Traders, Inc. agree to turn over a check to be received in payment of two Bridgeport Mills on Lockheed purchase order MMB 7 K 2510A, in the amount of $25,000.00 to W E Grace Mfg. Co. $6500.00 of this to be applied to a loan (note) in amount of $10,000. $500 of this to be a handling charge. Balance is the sum of $18,000. which W E Grace Mfg. Co. is advancing on this date to get the two above mills out of bonded warehouse for delivery to Lockheed. The warehouse is A P Pearson warehouse, Los Angeles.

January 27, 1970"

On February 17, 1970, Texas Tool received Lockheed's check for $24,750.00 payable to Texas Tool and W. E. Grace. Lockheed had deducted $250.00 as a 1% dis-

count for cash. The check was endorsed by Texas Tool and delivered to petitioner on February 18, 1970. Texas Tool gave no further directions concerning application of the $24,750.00, and petitioner credited the entire amount on the principal of the indebtedness. There were no subsequent transactions or communications between the parties affecting the usury question.

For many years our Constitution and statutes prohibited interest above ten per cent per annum, provided that contracts for usury shall be void, and authorized any person paying usurious interest to recover double the amount paid from the person, firm or corporation receiving the same. See Constitution, Art. XVI, Sec. 11, Vernon's Ann.St., as amended August 11, 1891; Arts. 5069 and 5073, Tex.Rev.Civ. Stat.1925. In 1960 the Constitution was amended to authorize the Legislature to define interest and fix maximum rates of interest. Texas Tool is a corporation, and corporations are now authorized to stipulate for any rate of interest not in excess of 1½ per cent per month on debts in the original principal amount of $5,000.00 or more. Art. 1302–2.09, V.A.T.S. The classes of persons who may be subjected to penalties for usury have been expanded to include those who contract for usurious interest, and more severe penalties have been prescribed. Art. 5069–1.06, V.A.T.S.

In so far as relevant here, the statute last cited provides:

(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error.

(2) Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court; provided further that any such person violating the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by fine of not more than One Thousand Dollars. Each contract or transaction in violation of this section shall constitute a separate offense punishable hereunder.

Respondent pled that the parties agreed orally and in writing that the $18,000.00 plus the $500.00 handling charge would be repaid within thirty days. In response to the issues that were submitted relating to the counterclaim, the jury: (8) found that the $500.00 handling charge was contracted for charged or received as interest; (9 and 9–A) refused to find that the parties agreed, either orally or in writing, that the $18,000.00 would be repaid within thirty days. It was on the basis of these findings that the trial court denied a recovery on the counterclaim. Respondent moved for judgment notwithstanding the verdict, contending that the jury's answers to Special Issues Nos. 9 and 9–A were immaterial since it was undisputed that petitioner "received" $500.00 interest on $18,000.00 for a period of 22 days. As previously indicated, the Court of Civil Appeals held that petitioner contracted for and received interest in excess of double the amount allowed by law.

In reaching this conclusion, the intermediate court relied upon the following rule stated in Ruling Case Law and quoted in Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.2d 282:

Though there is authority to the contrary, it does not seem requisite that an excess be payable in any event. On the contrary a contract is usurious when there is any contingency by which the lender may get more than the lawful rate of interest, whether it is so apparent that it becomes the duty of the court to

so declare, or whether it is a case in which it is necessary that the jury should find the facts. Usury, it is considered, does not depend on the question whether the lender actually gets more than the legal rate of interest or not; but on whether there was a purpose in his mind to make more than legal interest for the use of money, and whether, *by the terms of the transaction*, and the means used to effect the loan, he may *by its enforcement* be enabled to get more than the legal rate.

The Court in *Shropshire* was dealing with a contract that expressly entitled the creditor, at its option in the event of default in the payment of an annual installment of interest, to enforce collection of more than the amount advanced plus interest thereon for the term of the loan at the rate of ten per cent per annum. It was clear from the terms of the contract that the creditor could, upon the happening of the contingency, exact more than the legal rate.

■ Our situation here is quite different. The contract on its face does not purport to entitle petitioner, upon the happening of a contingency or otherwise, to exact interest in an amount greater than that allowed by law. Respondent failed to establish that the parties fixed a definite term for the $18,000.00 loan. They did intend for the indebtedness to be repaid promptly after Texas Tool received the Lockheed check. We thus have a contract to pay a fixed charge for an uncertain period of time, based on a contingency. In these circumstances and when the contingency is reasonable, the *contract* is not necessarily usurious merely because there is a possibility that more than legal interest might be paid. See Hartley v. Eagle Ins. Co., 222 N.Y. 178, 118 N.E. 622; 45 Am. Jur.2d, Interest and Usury, § 159; Annotation, 3 A.L.R. 1385.

■ The check was actually received about 22 days after the loan was made, and a $500.00 charge would amount to interest on $18,000.00 for that period of time at the rate of more than 45% per annum. The legality of the *contract* cannot be made to turn absolutely on this circumstance, however, because the parties may have contemplated that 60 or even 90 days would be required to consummate the sale and obtain payment from Lockheed. If the indebtedness matured 60 days after the loan was made, under the provisions of the contract petitioner would have received interest for the term of the loan at the rate of 16.67% per annum. The $500.00 charge would have amounted to interest on $18,000.00 for 90 days at the rate 11.1% per annum.

■ The essence of a contract is an agreement, and the written contract in this case is not an agreement to pay more than the legal rate of interest. While the evidence will support a finding that it was the common expectation of the parties that the check would be received in less than 56 days [1] or that the written contract was a mere cloak or contrivance to evade the usury statutes, neither of these facts is established conclusively and no issue submitting either theory of recovery was given or requested. See Rule 279, Texas Rules of Civil Procedure. We accordingly hold that, on the present record and for purposes of the counterclaim, petitioner and Texas Tool did not contract for usurious interest within the meaning of Art. 5069-1.06.

This holding does not dispose of the appeal, because the statutory penalties may also be recovered from one who "charges or receives" usurious interest. Since Lockheed deducted $250.00 as a cash discount, its check was for $24,750.00 rather than $25,000.00 as originally contemplated by the parties. The entire $24,750.00 was credited by petitioner on the principal of the indebtedness owing to it by Texas Tool, but the Court of Civil Appeals nevertheless

---

1. Interest on $18,000.00 for 56 days at the rate of 1.5% per month is $504.00. If the term of the loan was 56 days or more, therefore, the contract was not usurious.

 

held that petitioner received $500.00 interest. The court concluded that petitioner had no right to apply the entire proceeds of the check to principal when the contract required that $500.00 be applied to interest. In reaching this conclusion, the court interpreted the contract to mean that after applying $6,500.00 to the $10,000.00 note and $500.00 to interest, the balance of the Lockheed check would be applied on the $18,000.00 loan. We do not agree.

When the agreement was signed, the parties contemplated that $25,000.00 would be received from Lockheed. The contract so states. It further stipulates that "$6500.-00 of this to be applied" to the $10,000.00 note, and "$500 of this to be a handling charge." The parties then stated that "balance is the sum of $18,000." which petitioner was advancing on that date. This was not an agreement that the balance of the check, whatever the amount might be, was to be applied on the $18,000.00. The parties were contracting with reference to a $25,000.00 check, and they agreed that the $25,000.00 would be credited as follows: (1) $6,500.00 to the $10,000.00 note; (2) $500.00 to the handling charge; and (3) $18,000.00 in payment and discharge of the latest advance.

 Petitioner argues that since not all the stipulations as to application of the money could be honored and since Texas Tool made no attempt to direct the application of the $24,750.00 actually received, petitioner as the creditor was entitled to apply all the money to principal rather than interest. We do not agree. Under the facts of this case, the $250.00 shortage was not so substantial as to warrant petitioner's completely disregarding the original agreement. In determining how the $24,750.00 should be applied to the items mentioned in the original agreement, we turn to general rules governing application of payment in the absence of a contract. When a debtor fails to properly exercise his power to direct the application of the payment, the creditor ordinarily may apply the payment to any valid and subsisting claim he has against the debtor. See 60 Am.Jur.2d,

Payment § 83. Even in the absence of a direction from the debtor, however, the creditor may not apply the payment to an illegal claim. 60 Am.Jur.2d, Payment, § 100; Restatement, Contracts, § 389. In view of this rule it is our opinion that the $250.00 deficiency in the check should be deducted from the $500.00 which the parties agreed would be applied on the interest charge. We hold that petitioner was required to credit the $24,750.00 as follows: (1) $6,500.00 to the $10,000.00 note; (2) $18,000.00 to the principal of the loan made on January 27, 1970; and (3) $250.00 to the interest charge.

Thus $250.00 was received as interest on $18,000.00 for 22 days. That is in excess of the 1½% per month maximum permitted by law, but it does not exceed double the maximum rate. Petitioner is liable, therefore, only for the penalties prescribed by Paragraph (1) of Article 5069–1.06. The judgment of the Court of Civil Appeals is accordingly modified to reduce the judgment on the counterclaim to $3,000.00, which is: (1) double the amount of interest received, plus (2) the $2,500.00 attorney's fees fixed by the trial court. As so modified, the judgment of the Court of Civil Appeals is affirmed.