Robert B. FERGUSON et al., Appellants,

v.

TANNER DEVELOPMENT COMPANY et al., Appellees.

No. 16729.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Aug. 19, 1976.

Rehearing Denied Sept. 30, 1976.

Sears & Burns, David F. Beale, Houston, for appellants.

Vinson, Elkins, Searls, Connally & Smith, Paul E. Stallings, David T. Harvin, Houston, for appellees.

COLEMAN, Chief Justice.

This is a suit seeking to recover the statutory penalties for usury. The plaintiffs allege that a note secured by a vendor's lien on certain real estate required the payment of interest at a rate in excess of the statutory limit. They sought recovery of a penalty in amount of twice the interest charged and a permanent injunction against the foreclosure of the vendor's lien. After a trial to the court without a jury a judgment was entered denying the relief sought by plaintiffs and ordering foreclosure by judicial sale. The judgment will be reversed and rendered.

In November, 1973, the defendant, Tanner Development Company, sold to plaintiff, Robert Ferguson, as trustee for 12 Ferguson, Ltd., a tract of land in Harris County for a cash payment in the sum of $6,000.00 and a promissory note in the principal sum of $226,388.77 payable to defendant. The note was secured by a vendor's lien and a deed of trust on the property conveyed. The note was dated November 8, 1973, and required the payment of the first year's interest in advance. Thereafter interest would be paid in advance on the 20th day of January, April, July and October, of each calendar year beginning on the 20th day of January, 1974, and "thereafter until and including July, 1977, after which date no interest shall be paid on this note until after all prepaid interest is credited to this note; and after all prepaid interest is credited to this note, interest shall be payable thereafter as it accrues and upon demand by the payee." The principal of the note was required to be paid in equal quarterly installments of $2,800.00 on the 20th day of October, January, April and July of each calendar year beginning on the 20th day of October, 1977, and continuing thereafter until the 8th day of November, 1978, when the entire principal balance became due and payable.

The note provided for attorney's fees in the event the note was placed in the hands of an attorney for collection, or had to be collected by suit through the probate or bankruptcy court or other legal proceedings. The maker was given the privilege of prepaying all or any part of the note without penalty with certain restrictions. It provided that interest would cease upon amounts of principal prepaid, and that any unearned prepaid interest should be applied as a credit upon the principal. It provided that the maker of the note would not be personally liable thereon and that the payee or other holder of the note agreed to look solely to the enforcement of the retained liens for the satisfaction of the debt in the event of default.

The final paragraph of the note reads:

"This note shall be construed under the laws of the State of Texas, and the terms of this note have been made on the assumption that all scheduled payments will be made when herein provided, and in the event of the prepayment of principal, as herein provided for, or accelerated maturity from any cause, any interest paid on this note which is in excess of the maximum lawful rate permitted by the usury laws of the State of Texas as construed by courts having jurisdiction thereof, shall be considered for all pur-

poses as payment on principal, and so credited to the note."

The deed of trust contains this provision:

"In no event shall Grantor be required to pay, for the use, forbearance or detention of the money evidenced by the note secured hereby, more than the maximum legal rate of interest allowed by the laws of Texas, and the right to demand any such excess shall be and is hereby waived; any payment of an amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the note secured hereby; and this provision shall control every other provision of the note and deed of trust."

Ferguson failed to pay in full the interest installment becoming due in July of 1975. He was given an extension of time to complete the payment, but failed to do so. Tanner Development Company then accelerated the entire principal balance due, and gave notice of a trustee's sale. This suit was then filed.

The first question presented by this appeal is whether interest paid in the first year of a five year loan which exceeds the maximum legal rate of interest for one year renders the note usurious if the rate would be below the maximum when "spread out" over the full term of the note.

A leading case on this point, in which facts somewhat similar to those in our case were present, is *Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S.W.2d 282 (1930), opinion on motion for rehearing, 120 Tex. 400, 39 S.W.2d 11 (1931). In *Shropshire* the plaintiff borrowed the sum of $4,200.00 from Commerce and executed a note in the sum of $4,200.00, payable ten years after date. To secure payment of the interest plaintiffs executed ten interest coupons, each for the sum of $252.00, payable annually, and five notes, each for $252.00 payable one each year during the first five years of the loan period. By the terms of the note and the coupons and deed of trust securing same, it was stipulated that both the principal and interest of the note should bear interest after maturity, whether matured from lapse of time or by default, at

the rate of 10% per annum. The note and the deed of trust provided that, if default was made in the payment of any installment of interest, when due, then, at the option of the legal holders of the note, the same with interest and all other indebtedness and charges secured thereby would without notice become due and payable. In its original opinion the Supreme Court disposed of the case with this statement:

". . . It appears that the single question for our determination is whether a contract is usurious under the Constitution and statutes in Texas, which provides for the payment of higher rate of interest than 10 per cent. per annum, at the creditor's option, on no other condition than the default of the debtor in discharging annual installments of interest. Regardless of results in the event the debtor should discharge every promised annual installment of interest at or before maturity, it is too plain for dispute that this contract, on the face of the writings, entitles the creditor, at its option, on failure of the debtor to discharge certain annual installments of interest, to enforce collection from the debtor of a sum amounting to more than the $4,200 loaned with interest thereon for the term of the loan at the rate of 10 per cent. per annum. This results from the stipulations of the writings whereby such failure, at the creditor's election, shortens the term of the loan and increases the amount of the debtor's obligation."

The court looked at the entire contract and determined that it was usurious because of the acceleration clause. The court assumed that in the absence of the acceleration clause the contract could not have been held usurious because over the full ten year term of the loan the stipulated rate of interest would not have exceeded 10% per annum. The contract provided for the payment of interest at the rate of 12% per annum for the first five years of the term and at the rate of 6% per annum thereafter. In addressing this question the court stated:

"In view of the contrary holding of the Commission, we deem it proper to say

that, though logically it is usury to deduct in advance the highest legal rate of interest on the principal of a loan for any part of the term for which the principal is borrowed, or to collect interest on the entire principal at the highest rate monthly or quarterly or semiannually, or at other intervals less than a year, in advance of the year's expiration, yet these practices have been validated by the decisions in Texas, as elsewhere in the United States, too long for this court to now adjudge them to be usurious."

The doctrine announced in *Shropshire* was again considered by the Supreme Court of Texas in *Commerce Trust Company v. Best*, 124 Tex. 583, 80 S.W.2d 942 (1935). In this case the loan instruments were identical to those in the *Shropshire* case, and the court held the contract usurious under the doctrine of the *Shropshire* case. The court held that once it has been determined that the contract is tainted with usury, the penalty provided by law could be collected, despite the fact that the interest contracted to be paid for the entire period of the loan was at the rate of 9% since the interest agreed to be paid during the first five years amounted to more than 10% per annum by reason of "squeezing" part of the interest into five annual payments.

The *Shropshire* case was distinguished on its facts in *Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046 (1937). In this case J. H. Newsome and others applied to Otto Stoley for a loan of $6,400.00 for five years at 8% interest per annum or to secure someone else to make such loan. A loan was arranged and a note for the principal sum of $6,400.00 due five years after date and bearing 10% interest from maturity was executed. It was secured by a deed of trust on certain real estate. Attached to the note as a part thereof were five interest coupons in the principal sum of $512.00 each, representing 8% interest on the above principal note of $6,400.00 for each of the five years it was to run. The note contained a provision for acceleration of maturity on default, but also contained a provision that in the event the holder exercised his option to

mature all unearned interest notes must be cancelled. Stoley charged the borrowers $320.00 for making the loan, which sum the court held must be deducted from the face amount of the note to determine the real amount of the loan. The court also treated the $320.00 payment to be interest charged on the real amount of the loan. In order to determine whether or not the loan agreement was usurious the court figured the interest on $6,080.00 at 10% for five years, which amounted to $3,040.00. The court then added this sum to the $6,080.00 which was actually loaned and found that the sum of $9,120.00 was the maximum amount Stoley could have legally charged. The court then figured the interest on the sum of $6,400.00, the figure appearing in the note, for the five year term and found it to be $2,560.00. Adding that amount to the sum of $6,400.00 produced a total of $8,960.00, which was $160.00 less than could have been legally charged on the amount actually loaned. The court held, therefore, that the contract was not usurious.

The contention was advanced that under *Shropshire* the option to mature rendered the contract usurious. The court announced that the doctrine of *Shropshire* did not apply to this contract because it, "by its express terms, specifically provides, in effect, that if the principal note is matured before its named maturity date all unearned interest notes shall be cancelled." Following its discussion of the savings clauses in the note the court made this significant statement:

"Of course we do not mean to hold that a person may exact from a borrower a contract that is usurious under its terms, and then relieve himself of the pains and penalties visited by law upon such an act by merely writing into the contract a disclaimer of any intention to do that which under his contract he has plainly done."

*Nevels v. Harris* was distinguished by the Supreme Court in *Temple Trust Company v. Sewell*, 133 Tex. 417, 126 S.W.2d 943 (1939). In this case a fee to the lender was added to the sum actually borrowed and a

note was executed showing the total as the principal amount of the loan. The note contained an acceleration clause and also a savings clause. With reference to the loan fee included in the note the court said:

"While of course in law it could not lose its identity as interest, so far as protection of the borrower was concerned, yet in so far as the intention of the lender was concerned it became fixed as principal."

The court then construed the savings clause to require, in the event of acceleration, the payment of the full principal shown in the note, although the savings clause required reduction of the interest if necessary to avoid usury. The court distinguished *Nevels v. Harris* on the ground that in *Nevels* the commission note was kept entirely separate from the principal and thus could be operated upon by the savings clauses without any violence whatever to the intention of the parties. The court stated:

". . . The courts will diligently look through the form of a transaction to discover illegal interest and protect the borrower from its consequences, but they will not be diligent to treat a carefully planned disguise as other than what on its face it purports to be, and was intended to be, merely to save the lender from his usurious act."

After a careful review of the pertinent Texas authorities the United States Court of Appeals for the 5th Circuit in *Imperial Corporation of America v. Frenchman's Creek Corporation*, 453 F.2d 1338 (1972), stated the Texas law in these words:

"Since the commitment fee is interest by operation of law and not because the parties in their dealings with each other treated it as such, the agreements here do not specify the period for which this interest is considered to be 'payment for the use of money.' If, as in this case, there is a saving clause, Texas courts will give effect to it by spreading over the life of the loan the impact of the judicially determined interest . . ."

The question with which we are concerned is complicated by the decision of the Supreme Court in *Commerce Trust Company v. Ramp*, 135 Tex. 84, 138 S.W.2d 531 (1940). There the court said:

"The Court of Civil Appeals held that this loan was usurious . . . This holding was based on the ground that the additional 2½ per cent. interest on the principal of the loan was 'squeezed' into four annual payments of $3,125 each, instead of being spread over the ten-year period of the loan, and this resulted in making the rate for the first four years in excess of 10 per cent. per annum. This holding of the Court of Civil Appeals is so obviously correct that it becomes unnecessary to discuss the question. In fact, as we construe the various assignments in application for writ of error, plaintiff in error does not seriously attack this holding. At least, no argument is made and no authority cited which tend to raise a doubt as to the correctness of the holding of the Court of Civil Appeals in this respect."

In this case the court of civil appeals held:

"It is not necessary to resort to an interpretation of the accelerating clauses in either of the deeds of trust in this case to determine whether or not the contract was usurious. It is plainly expressed in the obligatory portions of the contract. Such contracts must be determined by the statutory limitation of 10 per cent. per annum for the use of the borrowed money for a term of one year. If the interest contracted to be paid exceeds that rate, the contract is usurious and the rule under which the courts must give to the contract a construction that will make it legal, if it be fairly susceptible of such construction, does not justify them in ignoring the very terms that have been adopted by the parties and which make the contract illegal under the provisions of the statute . . ." [*Commerce Farm Credit Co. v. Ramp*, 116 S.W.2d 1144, 1149.]

It is thus apparent that the court of civil appeals rejected the doctrine of "spreading" and that the Supreme Court affirmed this action, although it does not appear that the

Supreme Court considered the question of spreading, and it is likely that the case was governed by the doctrine of *Shropshire v. Commerce Farm Credit Company,* supra. This inconsistency was pointed out in *Riverdrive Mall, Inc. v. Larwin Mortgage Investors,* 515 S.W.2d 5 (Tex.Civ.App.—San Antonio 1974, writ ref'd n. r. e.). See also *Lincoln National Life Ins. Co. v. Anderson,* 124 Tex. 556, 81 S.W.2d 1112 (1935).

The rationale of the *Ramp* case was followed by the court of civil appeals in *Southwestern Investment Co. v. Hockley County Seed & Delinting, Inc.,* 511 S.W.2d 724 (Tex. Civ.App.—Amarillo 1974, writ ref'd n. r. e., 516 S.W.2d 136). The court stated the rule in these words:

"A loan contract is considered usurious if for the first year or first few years it requires the payment or more than the lawful rate, even though the interest calculated over the entire loan period does not exceed the statutory limit."

However, in *Hockley* the trial court found:

"That taking into consideration the terms of the note in question, the actual cash advance made by Cross-Defendant, SOUTHWESTERN INVESTMENT COMPANY, to Cross-Plaintiffs, and the total period of time in which the total cash advance was agreed to be repaid, the note in question, when executed, constituted an agreement to pay more than ten (10%) per annum, and thus was from date of execution, usurious . . ."

The Supreme Court in refusing the writ of error in this case rendered a per curiam opinion in which it said:

". . . No question as to the spreading of front-end charges over the life of a loan is presented by the facts in this case, and our action on the application for writ of error is not to be interpreted as an expression of opinion on that question."

The courts of Texas have long refused to hold usurious contracts requiring the payment of the highest legal rate of interest monthly in advance. *Geisberg v. Mutual Building & Loan Association,* 60 S.W. 478 (Court of Civil Appeals of Texas 1900, writ ref'd); *Guaranty State Building & Loan Association v. Farmer,* 84 S.W.2d 277 (Tex. Civ.App.—Fort Worth 1935, writ ref'd).

The rule that interest at the highest legal rate may legally be required in advance is said to have originated with Blackstone who thought that interest may as lawfully be received beforehand, for forbearing, as after. *Bothwell v. Farmers & Merchants State Bank & Trust Company of Rusk, Texas,* 120 Tex. 1, 30 S.W.2d 289 (1930). In *Bothwell* the court stated that the rule sanctioning the reservation of interest in advance at the highest conventional rate for a year or less is too firmly established to be departed from. The court stated that the principle is the same whether the interest is paid for all or a part of the year before the year's expiration. It stated that most text writers in many judicial opinions have pointed out "how devoid of logic is the rule which sanctions the collection in advance of interest at the highest conventional statutory rate, on even short-term loans, under statutes against usury." The court recognized as correct the rule that interest which has already lawfully matured may, together with principal, thereafter bear interest at the highest lawful rate. The court then stated:

"But the question which now confronts the court is whether a rule difficult to sustain in reason, save as a rule of property, which sanctions the advance deduction of interest at the highest conventional rate on short-term loans, and which sanctions the compounding of interest at the highest permissible rate after it has run and matured for part of the term of a loan, shall be extended to countenance the compounding of interest at the highest legal rate in advance of expiration of any part of the term for which the loan is made. Common sense counsels against extension of a rule not entirely defensible on principle. No less urgent is the protest of common sense against allowing a thing to be done indirectly which the law forbids being done directly. Both Constitution and statutes in Texas emphatically condemn a direct stipulation for the pay-

ment of 11 per cent per annum interest on a loan of money. No less ought they to be held to condemn any stipulation through which the same end may be attained, no matter what differences in phrasing may be found."

The court relied on and quoted from a case from Illinois:

".   .   .   We regard the toleration of taking interest in advance at the highest rate allowed by law, as an artificial rule, resting upon long usage and authority, unsupported by any sound reasoning, and can not consent to take that artificial rule as the basis of a philosophy by which a like rule may be extended to cases not within the artificial rule   .   .   ." [*First National Bank v. Davis*, 108 Ill. 633.]

In *Schmid v. City National Bank of Wichita Falls*, 132 Tex. 115, 114 S.W.2d 854 (1938), a loan was held usurious. The evidence showed that the borrower applied for a loan of $30,000.00. The borrower executed a series of twelve notes aggregating the principal sum of $33,000.00. After the notes were signed the sum of $33,000.00 was deposited to the account of the borrower, but he then issued his check in the sum of $3,000.00 to the lender. The notes bore interest after maturity. The court said:

"Disregarding form and looking to substance, as reflected by the entire loan transaction, it amounted to nothing more, and nothing less, than a loan by the City National Company to the Oil company of the principal sum of $30,000.   .   .   . (The oil company) obligated itself to repay said sum, and $3,000 additional, in stated monthly installments so that the time it could detain all the money borrowed amounted, on the average, to much less than a year. In spite of this, it was obligated in writing to pay $3,000, or 10 per cent. of the entire amount borrowed, as interest. This was, and is, a contract to pay 'exceeding 10 per cent. per annum on the amount of the contract,' for 'the use or forbearance or detention of money.' It follows that this contract is usurious, and was in its incipiency   .   .   ."

After considering the authorities discussed, the note under consideration signed by Ferguson, Trustee, to Tanner Development Company must be held usurious. The principal of this note is $226,388.77. It bears interest at 9½% per annum. Interest in the amount of $21,506.93 was required to be paid at closing. Thereafter quarterly payments of interest in advance beginning on January 20, 1974, were to be paid "until and including July 1977, after which date no interest shall be paid on this note until after all prepaid interest is credited to this note." No payments on principal are required prior to the twentieth day of October 1977. All past due principal and interest on the note bear interest from maturity at the rate of 10% per annum. If we follow *Commerce Farm Credit Company v. Ramp*, supra, the "squeezed" interest in the first year makes the note usurious on its face. If we follow *Nevels v. Harris*, supra, and deduct the first year's interest which was paid in advance from the face of the note to find the real principal, the note is no less usurious. The calculations supporting this conclusion are set out in an appendix to this opinion.

For the reasons discussed we hesitate to follow the rationale of *Ramp*. Because of the savings clauses contained in the note and deed of trust the approach of *Nevels v. Harris* will be followed. When we look at this transaction reasonably and interpret the contract as a whole in the light of attending circumstances, we conclude that the $21,506.93 "prepaid interest" in reality constituted a portion of the principal which was not to be advanced until it was applied to the loan beginning July 20, 1977. If we follow the reasoning of Tanner that the provisions of the note relating to prepayment of interest merely require that a full year's interest be prepaid throughout the term of the loan up to July 20, 1977, we would necessarily extend the rule authorizing prepayment of interest, which has been so often criticized as being unsound.

As shown by the calculations made by the appellant attached hereto as an exhibit, the maximum legal interest, that is, interest

calculated at the rate of 10% per annum in accordance with the payment schedule found in the note, on the actual principal, $204,888.84, is the sum of $101,442.67. The interest which would be required by the note on its face amount calculated at 9½% per annum as called for in the note is $106,520.42. The note requires a payment of interest in the amount of $5,087.75 more than the maximum allowed by law.

■ The savings clauses in the note and the deed of trust cannot operate to change the plain terms of the note. The initial payment was called interest and was to be applied as interest. Tanner Development was to have free use of the money for a period of time. Ferguson would not have the use of the full amount of money contracted for until September 1978. The intention of the parties concerning amount of interest due and the dates on which it was to be paid is clear. The savings clause cannot operate to convert payments of interest into payments on principal contrary to clearly stated provisions of the contract.

The finding of usurious interest is not based on the acceleration clause as was the case in *Shropshire*. The provision in the deed of trust is similar to that in *Nevels* and supports spreading of the initial payment. Under the facts of this case the contract is found to be usurious under its terms and the lender cannot "relieve himself of the pains and penalties visited by law . . . by merely writing into the contract a disclaimer of any intention to do that which under his contract he has plainly done." *Nevels v. Harris*, supra; *Temple Trust Company v. Sewell*, supra.

■ Interest is defined in Article 5069–1.01, V.A.C.S. as being the compensation allowed by law for the use or forbearance or detention of money. Tanner Development contends that the rule of the *Nevels* case should not be applied here because the transaction in question here was not a loan of money but rather was a sale of real estate. They say that in determining the true principal sum of the promissory note, the proper inquiry is what was delivered to appellants in exchange for the note. We see no distinction. The note required compensation to be paid not for the use of money but for the forbearance or detention of money, that is, the balance of the purchase price due for the land sold to the trustee. When Tanner Development required that one year's advance interest be paid at the time of the closing of the transaction, the amount of money on which they are due interest must be reduced by the same amount to determine the amount of money that Tanner Development Company was permitting Ferguson to detain. *Mossler Acceptance Co. v. Baker*, 149 S.W.2d 1016 (Tex.Civ.App.—Galveston 1941, writ ref'd).

The petition filed by the plaintiff was clearly sufficient to support a judgment that the note was usurious under a *Nevels v. Harris* approach. The plaintiff sought a declaration that the loan transaction was usurious and for a recovery from defendants of double the amount of interest provided by such loan. The facts were fully plead and a copy of the note was attached as an exhibit. Tanner Development asserts, however, that the case was not tried on a *Nevels v. Harris* theory, and that this contention was first presented to the trial court in a motion for new trial. The defendants pointed to allegations in the plaintiff's petition that the loan agreement required payments in excess of 10% per annum for the first year of the loan as supporting their contention that the case was tried under a *Ramp* theory. In their answer the defendants denied that they contracted for, charged or received interest in excess of that permitted by law, and stated:

"In this connection, they would show that the amount of interest for which they contracted, when spread over the entire five year term of the note, as permitted by law, does not exceed the rate of 10% per annum and is therefore not usurious."

The defendants further filed a cross-action for judicial foreclosure. In answer to this action the plaintiff alleged that because the note was usurious no interest was due and the plaintiff was not in default and

could not be prior to the date the principal became due. The judgment in this case was rendered on the 10th day of February, 1976. On the 19th day of January, 1976, the plaintiffs filed a motion for judgment in which they specifically brought to the attention of the trial court the fact that the loan transaction in the case was usurious under the *Nevels v. Harris* approach. The first paragraph of the motion states:

"Plaintiffs file this motion for judgment for the purpose of bringing before this Honorable Court the fact that the loan transaction in this case is usurious even if this is a *Nevels v. Harris* case, as contended by the defendants: . . ."

The motion contained a mathematical calculation of the interest and informed the court that the plaintiff would contend on appeal that the note was usurious under the *Nevels* approach. It is settled that an appellate court should not decide a case on a theory different from that on which it was pleaded and tried. *American Mutual Liability Insurance Co. v. Parker,* 144 Tex. 453, 191 S.W.2d 844 (1945). In this case, however, the pleadings were sufficient to support a judgment finding the note in question usurious. It is apparent from the record that the *Nevels v. Harris* approach to this question was before the trial court, and was clearly presented to him prior to the time he signed and entered the judgment in this case. A plaintiff is not required to plead his legal theory for recovery if he pleads fact sufficient to support a recovery. It is the duty of the trial court to determine the law and apply it to the facts presented. *Behan v. Ghio,* 75 Tex. 87, 12 S.W. 996 (1889).

We find no merit to the contention made by the defendant that the plaintiff has judicially admitted that the note was not usurious by reason of certain allegations as to the amount of interest found in his petition. *Behan v. Ghio,* supra; *DeMuth v. Head,* 378 S.W.2d 389 (Tex.Civ.App.—Dallas 1964, writ ref'd n.r.e.); *Griffin v. Superior Insurance Co.,* 161 Tex. 195, 338 S.W.2d 415 (1960).

In support of the trial court's judgment Tanner Development contends that the trial court correctly determined that Ferguson voluntarily prepaid the first year's interest at the time of closing and thereafter quarterly interest installments maintaining the prepayment at one year in advance and that, as a matter of law, such voluntary prepayments of interest cannot constitute usury. Testimony was presented that during the negotiations prior to the sales agreement Tanner Development was asking a more substantial down payment and periodic payments including both interest and principal. Ferguson, who with the full knowledge and consent of all parties, was to receive a fee for his services in negotiating the agreement, insisted that his investors would require the deal to be structured so that maximum tax benefits would be received by the investors. Tanner Development insisted on quarterly payments in order that they would have available funds to meet payments on an underlying loan secured by a lien on the property in question. The agreement worked out provided tax advantages to the investors in the form of a small down payment with a large initial interest payment and payments of interest only for a period of years. These agreements were set out in full in the loan instruments and as a result Tanner Development was entitled to enforce the payments provided therein. The transaction was integrated to meet the particular economic needs of both parties.

The question of whether usury exists is ascertained from the dominant purpose and intent of the parties embodied in the contract interpreted as a whole and in the light of attending circumstances and of the governing rules of law that the parties are presumed to have intended to obey. *Walker v. Temple Trust Company,* 124 Tex. 575, 80 S.W.2d 935 (1935). The subjective intent of the parties is immaterial, since the intent of the parties is presumed to be reflected in the documents which they signed. *Johns v. Jaeb,* 518 S.W.2d 857 (Tex. Civ.App.—Dallas 1974, no writ history). Where a contract imposes on the debtors a liability enforceable at the creditor's option,

for compensation in exce ss of the permissible maximum for the dete tion of the borrowed money, such contract is usurious. *Shropshire v. Commerce Farm Credit Company*, 120 Tex. 400, 39 S.W.2d 11 (1931). In *Terry v. Teachworth*, 431 S.W.2d 918 (Tex. Civ.App.—Houston [14th] 1968, writ ref'd n.r.e.), the court noted the argument that certain charges made by the lender were for extraordinary, distinct services rendered in the nature of cost and disbursement control and construction supervision, and that the payments made for such services were made with the complete agreement of all parties. It held that an agreement to pay usury is no defense, because usury generally occurs as a result of agreement.

Had the interest rate in the transaction before this court been adjusted downward, the requirement of one year's interest in advance would not have rendered the contract usurious.

The trial court found that Ferguson had defaulted in the payments on the promissory note and that Tanner Development had validly accelerated the maturity date of the note. Ferguson asserts that in so finding the court erred because no payment on principal was due and, since the contract was usurious, a default in the payment of the interest called for in the contract would not support the action of Tanner Development in accelerating the date of the payments to become due under the contract.

Prior to the 1967 amendments to the Usury Statutes, Article 5069, V.A.C.S., provided in part:

".  .  . All contracts for usury are contrary to public policy and shall be void."

This statute has been interpreted to mean that usurious contracts are void as to interest. Article 5069–1.02, V.A.C.S., now provides:

"All contracts for usury are contrary to public policy and shall be subject to the appropriate penalties prescribed in Article 1.06 of this Subtitle."

Under the previous statute the Supreme Court held:

"But even if it were true that the character of the payments, that is, whether they are to be regarded as principal or interest, should be determined by the method of their application, the last fourteen payments would not by this test be wholly payments of interest. They could not be applied to interest. The contract being void as to interest, no interest was ever due .  .  ." *Adleson v. B. F. Dittmar Co.*, 124 Tex. 564, 80 S.W.2d 939, 942 (1935).

In construing the present statute the Supreme Court of Texas in the case of *Wall v. East Texas Credit Union*, 533 S.W.2d 918 (Tex.1976), stated:

"Unquestionably, the terms of the statute demonstrate the legislative purpose that as to interest a usurious contract is unenforceable."

It is an established rule that contracts which are contrary to public policy are void. *James v. Fulcrod*, 5 Tex. 512 (1851). In a case applying Article 16, Section 11, Texas Constitution, as it read prior to the 1960 amendment, the court stated the rule in these words:

".  .  . Any written contract which provides directly or indirectly for a greater rate of interest than 10% shall be void and of no effect for the amount of the interest only .  .  ." [*Cherry v. Berg*, 508 S.W.2d 869 (Tex.Civ.App.—Corpus Christi 1974, no writ history.)]

The early cases establishing this rule appear to have based their decisions on the statute in force at the time rather than relying on constitutional interpretation. *Parks v. Lubbock*, 92 Tex. 635, 51 S.W. 322 (1899). In *Wall v. East Texas Teachers Credit Union*, supra, it was held that interest in a usurious contract is unenforceable in the courts. It follows logically that the failure to pay interest as stipulated in a usurious contract does not authorize the lender to accelerate future payments of either interest or principal.

In *Dallas Trust & Savings Bank v. Brashear*, 65 S.W.2d 288 (Comm. of App. of Texas, Sec. B, 1933), the court considered a case wherein the borrower brought suit to recov-

er double the amount of alleged usury claimed to have been paid on a loan agreement alleged to have been usurious in its incipiency. He also sought to cancel all future interest accruing on the loan contract, to cancel the mortgage insofar as it secured future interest, and to enjoin holders of all the principal loan notes from declaring their option to mature them for failure to pay the annual installments of future interest. The court affirmed the judgment of the district court which had found the contract usurious and awarded judgment for a penalty in double the amount of the paid usurious interest. The court also found that the obligation to pay interest in the future on the note was void and removed the cloud on the title to his property existing by virtue of the usurious contract to the extent of the usury, "but no further." In reaching its decision the Commission of Appeals said:

"As the case stands, the right to demand interest on the balance due of principal is denied by statute because of usury, and the creditor's claim is limited to collection of only such principal.

"In *Spann v. Sterns' Adm'rs*, 18 Tex. 556, a case similar to this, it was contended that the complainant should first offer to do equity by paying or tendering the payment of what, by her own showing, she honestly owes. In that case usury was involved and an injunction sought. The court held that the old chancery rule requiring tender of principal and legal interest thereon did not prevail under the Texas laws, and all that was necessary was to offer to pay the principal when due.

"So here, liability for the principal, admittedly due at a future date, is not denied and no relief is sought against its payment."

Since the contract is usurious, the interest payment which under the provisions of the loan agreement Ferguson was required to pay in July 1975 was an illegal claim, which Ferguson was not required to pay. *W. E. Grace Mfg. Co. v. Levin,* 506 S.W.2d 580 (Tex.1974). The failure to make payment on an illegal claim for interest did not constitute a default and did not authorize Tanner Development Company to accelerate the maturity date of the note. The trial court erred in so concluding.

Article 5069–1.06, V.A.C.S., provides that any person who contracts for interest which is greater than the amount authorized by the Act shall forfeit to the obligor twice the amount of interest contracted for and reasonable attorney's fees. Tanner Development contends, however, that if the note should be deemed usurious it is liable for a penalty computed 'on the basis of 9½% interest on the sum of $74,-488.74. This argument is based upon the fact that the loan agreement provides that payments made by Ferguson be placed in escrow and that the amounts due from Tanner Development on a note in the principal sum of $151,900.00 payable to American Savings & Loan Association and secured by a lien on the property be paid out of the escrowed funds. This argument is based upon the well established doctrine under a previous usury statute to the effect that a person did not "receive" usurious interest and thus become liable for the statutory penalty when he merely collected the borrower's interest payments and transmitted them to a third party. A person received usurious interest and was liable for the statutory penalty only when he received the interest payments for his own use and benefit. *Stacks v. East Dallas Clinic,* 409 S.W.2d 842 (Tex.1966). The contract specifically provides that Ferguson does not assume the payment of the underlying obligation to the American Savings & Loan Association. Tanner Development remains solely liable to the Association for this debt. The funds paid by Ferguson which are used to make payments on the debt of Tanner Development to the Association benefit Tanner Development.

The present usury statute is significantly different from the previous statute in that it authorizes a penalty in the amount of twice the interest contracted for, demanded or received. Ferguson has clearly contracted to pay the sum of $101,432.87 as interest

to Tanner Development Company. Ferguson is entitled to recover as a penalty $202,865.74 plus his reasonable attorney's fees.

Ferguson contends that he is also entitled to recover in addition to the penalty all interest which he has paid to Tanner. In *Wall v. East Texas Teachers Credit Union*, supra, the Supreme Court held that the lender was not entitled to receive the interest due under the contract before he was required to forfeit the statutory penalty of "twice the amount of usurious interest contracted for, charged or received." The court stated that to allow recovery of the interest due under the contract would not give effect to the legislative intent that the borrower recover double the amount of the interest because in such event the forfeit in his favor is not "twice the interest contracted for, but only once." While the point does not appear to have been presented in the case, the Supreme Court in rendering judgment for twice the amount of usurious interest received in *W. E. Grace Mfg. Co. v. Levin*, 506 S.W.2d 580 (Tex.1974), did not require the lender to repay the interest received in addition to the penalty. The statute does not in terms require as additional penalty the return of usurious interest received by the lender. In this case the plaintiff, Ferguson, specifically sought judgment for the return of all interest paid on the note. The courts of Texas have recognized a common law action to recover usurious interest which had been paid by the borrower to the lender. *Bexar Building & Loan Association v. Robinson*, 78 Tex. 163, 14 S.W. 227 (1890). In the case above cited, however, the court allowed recovery of the amount by which the interest paid exceeded the legal rate of interest. This rule was recognized in *Thompson v. Kansas City Life Ins. Co.*, 102 S.W.2d 285 (Tex.Civ. App.—Waco, 1937, writ ref'd). The rule is generally recognized. Annotation: Usurious Payments—Recovery by Payor, 59 A.L. R.2d 522. In cases arising prior to the adoption of our present usury statute at which time the law authorized a penalty only for usurious interest received by the lender within two years from the date of suit the courts proceeded under the assump-

tion that a recovery of the penalty was an exclusive remedy except as to usurious interest paid more than two years prior to the filing of suit which the debtor could recover by claiming the right to have such interest payments applied to the principal. *Adleson v. B. F. Dittmar Co.*, 124 Tex. 564, 80 S.W.2d 939 (1935). See *National Bond & Mortgage Corp. v. Mahanay*, 124 Tex. 544, 80 S.W.2d 947 (1935). Article 5073 providing that when a greater rate of interest then 10% has been received or collected upon any contract, the person paying the same "may by an action of debt recover double the amount of such interest from the person, firm or corporation receiving the same" was construed as requiring one having received such interest by way of penalty to restore it and to pay also a like amount. *Commerce Trust Company v. Best*, 124 Tex. 583, 80 S.W.2d 942 (1935).

The Supreme Court of Texas has construed Article 5069–1.06, V.A.C.S., as providing that any one who contracts for, charges or receives interest greater than 10% shall be required to forfeit twice the amount of interest contracted for whether or not interest has been paid. *Wall v. East Texas Teachers Credit Union*, supra. In that case the lender was not permitted to receive the interest due under the contract as a credit against the statutory penalty. Tanner Development Company is not entitled to offset against the penalty future interest payable under the terms of the note. Ferguson is entitled to recover double the amount of the interest provided in the contract. A lender who has collected usurious interest should be in no better position than one who has merely contracted for or charged such interest. Since the Supreme Court determined in *Wall* that the lender in a transaction found to be usurious by reason of our statute on usury was not entitled to recover interest in any amount on the money loaned, we see no reason why in an action to recover interest previously paid the recovery should be limited to the amount by which the interest paid exceeds the amount which would have been due at the legal rate.

In his findings of fact the trial court found that the sum of $20,000.00 would be a reasonable attorney's fee for representing plaintiff in this lawsuit through entry of final judgment, and that the sum of $5,000.00 would be a reasonable fee for representing plaintiffs in an appeal of this lawsuit in the court of civil appeals, and the further sum of $3,000.00 would be a reasonable attorney's fee for representing plaintiffs in this lawsuit in an application for writ of error to the Supreme Court, as either the petitioner or respondent.

The judgment of the trial court is reversed and judgment is here rendered that Robert B. Ferguson, individually, and in his capacity as trustee for 12 Ferguson, Ltd., and as general partner of and on behalf of 12 Ferguson, Ltd.; 12 Ferguson, Ltd.; and R. B. Ferguson & Company, Inc. recover against Tanner Development Company, a Texas joint venture composed of Herbert L. Axelrad, Walter D. Kleine, III, and David B. Turkel; and Herbert L. Axelrad, Walter D. Kleine, III, and David B. Turkel jointly and severally judgment for the sum of $202,865.74, being double the amount of usurious interest contracted for, and $59,144.04, being the amount of interest paid to the defendants, together with attorney's fees in the amount of $28,000.00, such amount to be reduced to the sum of $25,000.00 in the event no application for writ of error to the Supreme Court of Texas is filed.

Judgment is also rendered that the defendants, cross-plaintiffs in the trial court, be denied judgment for foreclosure of the lien on the property securing the note in question.

Reversed and judgment rendered.

## APPENDIX

### The Computations for the actual amount of interest contracted to be paid by the note

| | Interest Due Date | Interest |
|---|---|---|
| Fourth Step | 11/12/73: | 21,506.93 |
| | 1974: | 21,506.93 |
| | 1975: | 21,506.93 |
| | 1976: | 21,506.93 |
| | 1/20/77: | 5,376.73 |
| | 4/20/77: | 5,376.73 |
| | 7/20/77: | 5,376.73 |

$102,157.91  Actual Interest Contracted For Through 7/20/77

The note requires the above amount of interest to be paid by 7/20/77. Some of this interest is "prepaid interest". The note requires no further interest payments until all prepaid interest has been applied to the loan, in other words until the interest is "even"—until all "prepaid" interest has been earned.

The next computation, therefore, is to determine how much interest has been earned as of 7/20/77.

| | | |
|---|---|---|
| Fifth Step | 11/12/73 to 11/12/76 = (3 years interest at 9½% per annum) | $   64,520.79 |
| | 11/12/76 to 7/20/77   = (250 days x $58.9231 [ interest per day at 9½% per annum] | + 14,730.78 |
| | Total interest earned (at 9½% per annum through 7/20/77) | $79,251.57 |

The next step is to determine how much interest has been prepaid on 7/20/77.

| Sixth Step | $102,157.89 | (Total contracted interest through 7/20/77: Fourth Step) |
|---|---|---|
| | −79,251.57 | (Total earned interest through 7/20/77: Fifth Step) |
| | $ 22,906.32 | (Total prepaid interest on 7/20/77) |

The next step is to determine when this prepaid interest will be earned. This step is complicated by the fact that quarterly principal payments of $2,800 each are thereafter required, thus rendering the amount of interest earned less each quarter, and in differing amounts.

The first quarterly payment of $2,800 principal is due October 20, 1977. Therefore, from 7/20/77 until 10/20/77, interest is accruing on the original principal balance of $226,388.77.

| Seventh Step | Interest 7/20/77–10/20/77 = | $ 5,376.73 |
|---|---|---|
| | Principal reduction on 10/20/77 of $2,800 leaves new principal balance of $223,588.77 | |
| | Interest earned 10/20/77–1/20/78 = ¼ (year) x .095 (% interest per year) x $223,588.77 | 5,310.23 |
| | Principal reduction on 1/20/78 of $2,800 leaves new principal balance of $220,788.77 | |
| | Interest earned 1/20/78–4/20/78 = ¼ (Year) x .095 (% interest per year) x $220,788.77 | 5,243.73 |
| | Principal reduction on 4/20/78 of $2,800 leaves new principal balance of $217,988.77 | |
| | Interest earned 4/20/78–7/20/78 = ¼ (year) x .095 (% interest per year) x $217,988.77 | 5,177.23 |
| | Principal reduction on 7/20/78 of $2,800 leaves new principal balance of $215,188.77 | |
| | Interest earned 7/20/78–10/20/78 = ¼ (year) x .095 (% interest per year) x $215,188.77 | 5,110.61 |
| | Total interest earned from 7/20/77 through 10/20/78, therefore is: | $ 26,218.53 |

Since prepaid interest on 7/20/77 equals $22,906.32 (Sixth Step), all such amount has been "earned" by 10/20/78, and interest is now owed on the note:

| Eighth Step | $ 26,218.53 | (Total earned 10/20/78: Seventh Step) |
|---|---|---|
| | −22,906.32 | (Prepaid interest: Sixth Step) |
| | $ 3,312.21 | Interest required to be paid on note by 10/20/78 |

Additional interest is required to be paid on note through final maturity of note 11/8/78. This calculation is:

| Ninth Step | Principal reduction on 10/20/78 of $2,800 leaves new principal balance of $212,388.77 | |
|---|---|---|
| | Interest earned from 10/20/78–11/8/78 = (19 days x $55.29 [interest per day]) | $ 1,050.32 |

Total interest required to be paid by the note, therefore is:

Tenth Step

Interest required to be paid
through 7/20/77: Fourth Step ....... $102,157.89

Interest required to be paid
as of 10/20/78: Eighth Step ....... 3,312.21

Interest required to be paid
as of 11/8/78: Ninth Step ....... 1,050.32

$106,520.42

$106,520.42 is the actual sum contracted to be paid as interest by the terms of the promissory note.

Computation for actual maximum legal interest on the note

The actual maximum legal rate of interest on this note, based on actual contracted principal reductions, is as follows:

Eleventh Step

Actual principal—$204,881.84
(First Step)

10% interest on $204,881.84
from 11/12/73 through
11/12/76 (for 3 years) = ....... $ 61,464.54

10% interest on $204,881.84
from 11/12/76 through
10/20/77 (date of first
principal reduction) = ....... 19,196.46

Principal reduction of
$2,800 on 10/20/77,
leaving a principal
balance of $202,081.84

Interest at 10%, 10/20/77 through
1/20/78 = ....... 5,052.04
¼ (year) x .10 (% per annum)
x $202,081.84

Principal reduction of
$2,800 on 1/20/78 leaving
principal balance of
$199,281.84

Interest at 10%, 1/20/78 through
4/20/78 = ....... 4,982.04
¼ (year) x .10 (% per annum)
x $199,281.84

Principal reduction of
$2,800 on 4/20/78 leaving
principal balance of
$196,481.84

Interest at 10%, 4/20/78 through
7/20/78 = ....... 4,912.04
¼ (year) x .10 (% per annum)
x $196,481.84

Principal reduction of
$2,800 on 7/20/78 leaving
principal balance of
$193,681.84

Interest at 10%, 7/20/78
10/20/78 = ....... 4,842.04
¼ (year) x .10 (% per annum)
x $193,681.84

Principal reduction of
$2,800 on 10/20/78 leaving
principal balance of
$190,881.84

Interest at 10%, 10/20/78 through
11/8/78 =
19 (days) at $52.59 (interest
per day)

993.51

Total interest at 10% =

$101,442.67