### ABILENE STATE BANK v. UNITED STATES FIDELITY & GUARANTY CO.

No. 818.

Court of Civil Appeals of Texas. Eastland.

April 3, 1931.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellant.

Kirby, King & Overshiner, of Abilene, for appellee.

LESLIE, J.

The plaintiff, United States Fidelity & Guaranty Company, sued the defendant, Abilene State Bank, in the justice court of Taylor county, Tex., to recover damages in the sum of $178.51 alleged to have been paid by said bank from the funds of Doyal Garrison, contrary to an agreement between the plaintiff, one S. R. Stanage, a purported guardian of the person and estate of Garrison, and the bank. An appeal was had to the county court, and there the trial was before the court without a jury and judgment rendered in favor of the plaintiff. The defendant appeals. The record contains an agreed statement of facts, as well as findings of fact and conclusions of law. In the county court the plaintiff filed written pleadings, but there is no showing that they were exclusively so. The defendant answered by general demurrer, general denial, specially pleaded failure of consideration, and further that the plaintiff, without being compelled to do so, voluntarily paid its money to one who had no legal authority to demand it.

By four propositions of law the appellant challenges the correctness of the judgment of the trial court. In each proposition much emphasis is laid on the fact that the guardianship proceedings hereafter to be noticed were null and void. The facts out of which the litigation arose are substantially these:

On July 15, 1927, S. R. Stanage was appointed guardian of the person and estate of U. D. Garrison, also known as Doyal Garrison, a non compos mentis. The plaintiff, bonding company, became surety on the bond of said Stanage, who agreed with the surety company that the Abilene State Bank, defendant, should be used as a depository of the funds coming into his hands as guardian, and that the same should be paid out only on checks signed by himself as guardian, and countersigned by P. S. Kauffman, Jr., the agent of plaintiff. By a written communication to the defendant bank, said Stanage acquainted it with the agreement thus entered into between himself and said surety. The bank acknowledged receipt of said notice by a communication as follows:

"To the United States Fidelity & Guaranty Company:

"Gentlemen:

"We have received and filed notice dated July 16th, 1927, from S. R. Stanage as Guardian in the matter of U. D. Garrison, that all checks on any deposits in the bank in his name as such Guardian must, if honored by us, first be countersigned by P. S. Kauffman, Jr.

"There is now on deposit in this bank in the name of Doyal Garrison as such $369.75.

"Yours very truly,

"Abilene State Bank."

Pursuant to the above notice and arrangement, the $369.75 was deposited to the account of S. R. Stanage, guardian of the estate of Garrison. Vendor's lien notes amounting to about $2,800 left in the custody of the bank were delivered into the custody of said guardian, who was thereafter by order of the probate court authorized to collect two of said $500 vendor's lien notes. After the opening of said guardian's account, the bank paid out $178.51 of said first-named funds on the guardian's checks, which had not been countersigned by plaintiff's agent. Subsequently, the court disapproved a report which the said Stanage, guardian, attempted to make of the condition of the estate, and Stanage was himself later removed as guardian of the estate. The action of the court was based upon a finding that said guardian had misappropriated $779.86 of the ward's funds. Upon the removal of Stanage as guardian, one James P. Stinson was appointed guardian of the person and estate of said Garrison, and he soon

thereafter filed in the court a petition in which he alleged that the guardianship proceedings of said Stanage, as well as that of himself, were void. Various reasons were assigned why they were null and void, chiefly perhaps because Garrison had been adjudged a lunatic without .any notice, hearing, or trial by jury. In any event, the trial court found that both guardianship proceedings were void, and since no issue arises on this record as to the correctness of that conclusion, the various questions will be disposed of upon the theory adopted in the trial court.

In his petition said Stinson alleged that his predecessor, Stanage, during his purported guardianship, had misappropriated various sums belonging to said Garrison, and that he had demanded the return of the same to said ward by the bonding company. the surety on Stanage's bond. It was ascertained that the amount of the shortage was $681.91, and in his petition said Stinson sought and obtained permission from the court to settle with the surety company for that amount and receipt it in full for all claims against it arising out of Stanage's misapplication of funds belonging to Garrison. Upon such conditions the surety company paid the above sum to Stinson, who, upon further permission and authority of the court, paid the same directly to said Garrison. Upon this state of facts the surety company's right to recover the $178.51 is challenged by four propositions, which are, in substance, as follows:

(1) That the judgment is erroneous, in that the plaintiff failed to show the existence of a contract between the surety company and the bank, binding the latter to pay to the plaintiff the sum sued for; (2) that the guardianship proceedings of Garrison being null and void, and the funds being already on deposit in the defendant bank in the name of Garrison, there was no consideration for any contract between the plaintiff and the defendant with reference to said funds; (3) that such guardianship proceedings being null and void as aforesaid, and the evidence showing that the plaintiff surety company was not compelled to pay any sum of money to Stinson or any other person legally authorized to. collect same, the court erred in rendering a judgment for plaintiff; and (4) the evidence showing that the money on deposit with the bank belonged to Garrison and was deposited by him, and that the guardianship proceedings were void, the defendant bank was liable to Garrison only for said funds and no one else.

As above observed, each of appellant's propositions rests essentially upon the fact that the two purported guardianships were null and void. Under the appellant's first proposition, and in fact under each of them, it is contended that said Stanage and Stinson having never been appointed guardian of the estate of Garrison, neither of them had the

right to control such funds and had no capacity whatever to contract with reference to how the bank should pay out such funds, and that the bank had no authority itself to pay out the funds, except upon an order from Garrison himself, the party to whom the money belonged, and who placed it on deposit in the bank. The gist of the propositions is that the foregoing notice to the bank of the agreement between Stanage and the surety company, plaintiff in this case, is wholly insufficient to bind the Abilene State Bank to pay the plaintiff in this case for having paid out a part of the funds of Doyal Garrison without the signature of the plaintiff's agent, and that the mere fact that the bank signed the notice of filing of such a contract did not bind the bank to dispose of the proceeds as agreed upon between said Stanage and the plaintiff; the arrangement or purported contract being a nullity because the parties to the same had no legal right or capacity to carry it out.

We do not believe these contentions are supported by the record. If in the outset the bank had denounced the Stanage guardianship proceeding as illegal and void, and refused to permit the purported guardian to take charge of or in any way dispose of Garrison's funds, it would certainly have been within its right and duly performed its obligations to its depositor by reason of the contentions made. This it did not do, however, and the bank, as did all the other parties involved, regarded the guardianship proceedings as legal and valid. It acknowledged receipt of the notice of the filing of the contract between Stanage and the surety company, passed the $369.95 belonging to Garrison to the credit of Stanage, guardian, and apparently paid out $137.28 of said funds on countersigned checks of the guardian, and $178.51 sued for upon checks of the guardian alone. This latter amount was by order of the probate court later collected by the guardian, Stinson, and paid to Garrison himself, who was never legally adjudicated an insane person, and who remained presumptively sane.

■ Under the facts of the case the bank undoubtedly should have retained the funds and delivered them on demand to Garrison. It did not do so, and, regardless of what it might have done, this particular fund was, on demand of Stinson, actually refunded by the surety company to him, who, under order of the court, paid it directly to the rightful owner, Garrison. Under these circumstances, Garrison could not recover this amount from the bank, since he has not been injured by what occurred.

■ Had Garrison sued the guardian, Stanage, and the surety company for the $178.51 converted by said guardian, they would not be heard to defend on the ground of alleged

invalidity of the guardianship proceedings, and thereby escape liability for the misappropriation of funds which came into the hands of the guardian under and by virtue of said proceedings, and the bond executed by the surety company. Portis v. Cummings, 21 Tex. 266; Minchew et al. v. Case (Tex. Civ. App.) 143 S. W. 366; Moore et al. v. Hanscom (Tex. Civ. App.) 103 S. W. 665; Frenkel v. Caddou (Tex. Civ. App.) 40 S. W. 638.

Upon the same principle and for like reasons, the bank, having recognized the validity of the proceedings (as did Stanage and the surety), and placed the funds to the account of the guardian Stanage, and then permitted him to draw it out on checks not countersigned, but in violation of the three-party agreement by which the deposit was left with the bank, should not be permitted to avoid liability to the surety company, which made good to Garrison the defalcation rendered possible by the bank's conduct.

After such notice and agreement, the bank was dealing with a joint deposit and should at least have observed the terms upon which it was made to avoid rendering itself liable for the manner in which it paid out the same. Columbia Finance & Trust Co. v. First Natl. Bank, 116 Ky. 364, 76 S. W. 156.

Also, having accepted the deposit and actually passed the same to the account of the guardian upon the strength of the purported guardianship proceedings, and in recognition of the surety company's relation to the fund and the estate, the bank should not, under the facts alleged and proved in this case, be permitted to assert the invalidity of the guardianship as a defense to this suit. Frenkel v. Caddou (Tex. Civ. App.) 40 S. W., 638; Willey v. Crocker, 7 Cal. Unrep. 152, 72 P. 832.

According to the agreed statement of facts and the court's findings, the funds would not have been left with the bank had it not recognized the validity of the guardianship proceedings and agreed to pay out the funds on countersigned checks. From such circumstances arose the duty on the part of the bank to make good to the surety company such funds belonging to Garrison, paid out on checks not countersigned, and misappropriated by Stanage.

It is believed that the invalidity of the two guardianship proceedings in no way affects the rights of the parties to this litigation. Garrison had the right to demand and recover the misappropriated funds from the bank or from Stanage and his surety. The controlling fact is that the default has been made good to Garrison, regardless of the means and agency by which it was done, and, having been made good by the surety company, who was obligated to do so upon the demand of Garrison, the surety has a right to recover of the bank the $178.51 misappropriated by Stanage and paid to him by the bank in violation of the agreement alleged. That agreement, we think, was based upon a sufficient and valuable consideration. In the agreed statement of facts it is said: "If said bank had not executed said written agreement, the plaintiff, as surety on the bond of said S. R. Stanage, would have required said guardian to remove said funds from said bank, and the consideration for said agreement was the keeping by the guardian of said funds on deposit in said bank."

The keeping of the funds and the use thereof by the bank, under the mutual agreement that it would pay the same only on countersigned checks by the surety, was a sufficient consideration to require the bank's observance of the terms of the agreement. Clement v. Producers' Rfg. Co. (Tex. Com. App.) 277 S. W. 634.

The further contention of the appellant that, since the guardianship proceedings were invalid, it was and is liable to Garrison only, is without merit. It has not paid said funds to Garrison, but the default has been made good to the estate by the payment of the amount directly to Garrison, who therefore is not injured nor in a position to demand repayment by the bank.

The appellant's propositions are kindred and in fact present the same contention from different angles. They have been discussed together, and from what has been said it follows that we overrule each of them.

For the reasons assigned, the judgment of the trial court is affirmed.