## UNITED STATES FIDELITY & GUARAN-TY CO. v. SAN DIEGO STATE BANK.

### No. 4120.

Court of Civil Appeals of Texas. El Paso.

Sept. 18, 1941.

Rehearing Denied Oct. 9, 1941.

House & Irvin, of San Antonio, for appellant.

Perkins & Floyd, of Alice, for appellee.

PRICE, Chief Justice.

This is an appeal from the judgment of the District Court of Duval County. In the action United States Fidelity & Guaranty Company was plaintiff, San Diego State Bank defendant. The judgment was in favor of the defendant Bank. Plaintiff has perfected this appeal therefrom.

The parties will be here designated as they were in the trial court.

Plaintiff's suit was filed June 9, 1939. The petition charged that defendant had failed to fulfill the terms of a counter-signature agreement entered into between it and defendant and one Solis, guardian, and relating to the funds of Solis as such guardian. The agreement was alleged to be a condition to the plaintiff's becoming surety upon the bond of Jose Solis, as guardian of the estate of Consuela Serna, a minor. It is alleged plaintiff suf-

fered a loss of $1,986.57 as a result of various breaches by defendant of the counter-signature agreement.

There is in this appeal no question presented by the pleadings. The pleadings of the parties are ample to support each and every issue hereinafter discussed. In our opinion the proper disposition of this appeal depends upon a determination of whether or not the alleged cause of action of plaintiff was barred by the statute of limitation.

The trial was before the court without a jury, and upon the request of defendant the court filed findings of fact and conclusions of law.

The court concluded as a matter of law, in substance, that plaintiff acquiesced in defendant's cashing the checks on the guardian's account without the signature of Rufus E. Glover; that the cause of action of plaintiff was barred by the four years' statute of limitation.

The following are the facts upon which depend a proper disposal of this appeal; by this is meant such facts as are undisputed or established as such by the findings of the trial court on evidence justifying same:

On the 2nd day of December, 1926, Jose Solis qualified as guardian of the estate of Consuela Serna, a minor, giving bond in the sum of $7,500, upon which plaintiff was the sole surety. At the time he qualified as guardian there was on deposit with defendant belonging to the estate of the minor, the sum of $2471.97. Contemporaneously with the execution of the bond Solis signed a letter addressed to the defendant apprising it of his appointment as guardian, and that he had agreed with plaintiff to keep the funds of the estate on deposit with defendant, and no checks should be paid out of said funds unless they were counter-signed by Rufus E. Glover; that this agreement was the condition of plaintiff's executing the bond as surety. The defendant thereupon addressed a letter to the plaintiff stating, in substance, that it had received the letter in question, and in substance assented to the condition as to the counter-signature of Rufus E. Glover being required for the cashing of any checks drawn against the guardianship account of Solis. In this matter plaintiff acted through Rufus E. Glover, its local agent, and he likewise acted for the bank. Rufus E. Glover was at said time and at all relevant times herein the cashier or assistant cashier of the defendant, and also the agent of plaintiff.

Solis kept on deposit with defendant the funds of the estate until March 7, 1934, at which time the account was closed. As such guardian he drew against such account from time to time. From his appointment as guardian to the closing of the account he drew some several hundred checks; only one of these checks was counter-signed by Glover. That was a check to plaintiff for the first premium on the bond. Three or more of the checks were payable to plaintiff for annual premiums, and were cashed by it without the counter-signature of Glover.

It is a fair inference from the evidence that Glover knew that the guardian was so drawing such checks and the bank cashing same. It is also a fair inference from the fact that plaintiff presented and had paid checks in its favor without the counter-signature of Glover that it had notice of the breaches of the contract in this respect; it is likewise a fair inference that before the checks were paid the other employees of defendant would submit same to Glover and he would verbally direct the payment thereof. The total of the checks so presented and cashed by defendant was several thousand dollars, and at last exhausted the account, which had from time to time been augmented by funds belonging to the estate. Glover did not communicate the fact to plaintiff that the checks of the guardian were being cashed without his counter-signature. Plaintiff was without notice of such fact until a short time before filing this suit, unless it is charged with notice by reason of its relationship to Glover and its cashing the checks payable to it drawn by the guardian and cashed without the counter-signature of Glover. That neither the acts of Glover, as agent of plaintiff, nor the bank, were fraudulent; that Glover did not permit the withdrawal of the cancelled checks of Solis, but retained them in his possession for the purpose of preserving data for the final account of Solis with the estate. All of the checks issued by Solis and cashed by defendant were so issued between December 2, 1926 and March 7, 1934. The guardianship was finally closed June 26, 1939.

The ward, joined by her husband, claimed a default on the part of Solis as guardian. Plaintiff, as surety, to make good the default, was compelled to pay the sum

of $1,500, and reasonably expended on attorneys' fees, expenses and costs the further sum of $486. This payment was made on or about January 26, 1939.

The evidence establishes that this was not a voluntary payment, but a payment made for the defaults of Solis. It is fairly inferable from the evidence that Solis is insolvent, or practically so.

Before seeking to apply the law to this case, it may be helpful to consider the legal obligation owed by the respective parties, the one to the other, and the basis thereof. The counter-signature letter was a contract between three parties, plaintiff, defendant and Solis. Abilene State Bank v. United States Fidelity & Guaranty Co., Tex.Civ.App., 37 S.W.2d 815.

Rufus Glover was, in making this contract, the common agent of plaintiff and defendant, acting as such with the knowledge of each party. In the counter-signing of the checks he was the agent of plaintiff; in the performance of his duties as cashier or assistant cashier he was the agent of the defendant. The provision that no checks were to be paid without his counter-signing same was not an end in itself, but was a means to an end. The requirement was to the end that he might know or have an opportunity to investigate for plaintiff how money was being drawn out and for what purpose, and to thus protect the liability of the principal on the bond by refusing to permit money to be withdrawn for an unlawful use. Mere counter-signing of the checks would be no protection to the principal. It would only give written evidence of his acquiescence in the withdrawal. Glover had the authority delegated to him to acquiesce in the withdrawals he thought proper. It is undisputed that he did acquiesce in the withdrawals. Likewise it is undisputed that he did not evidence his acquiescence in the exact manner contemplated by the counter-signature letter.

As we have stated, the basis of all duties between the plaintiff and defendant was contractual. It is not contended defendant knew, or had notice, that Solis was misapplying the trust funds, if he did so do. Defendant's default was a breach of a contract. These breaches all occurred between December 2, 1926 and March 7, 1934. This action was instituted on the 9th day of June, 1939. If limitation commenced to run from the date of each breach, clearly the cause of action is barred by limitation. Art. 5529, R.S.1925. Plaintiff contends that its cause of action accrued upon its making good the defaults of Solis. Further, that it did not arise until it had notice of the breach of the contract requiring the counter-signature of Glover; further, that the counter-signature agreement was for the benefit of the ward, and it having made good the defaults of the guardian, it is subrogated to the rights of the ward.

The first two of these contentions in our opinion are disposed of by the case of Wichita National Bank v. United States Fidelity & Guaranty Co., 147 S.W.2d 295, 297, by the Fort Worth Court of Civil Appeals. We borrow from that opinion the following quotation from 1 Corpus Juris Secundum, Actions, p. 1387, § 124: "A cause of action arising out of contractual relations between the parties accrues as soon as the contract or agreement is breached."

The case by the Fort Worth Court seems to us to adequately dispose of the contention that the cause of action arose only upon payment by plaintiff, and that notice of the breach was required to set the statute in motion. This case is in many respects parallel with the case at bar, except that here, in our opinion, plaintiff had notice that the withdrawals were being made without the counter-signature.

Glover was the common agent of plaintiff and defendant, acting as such with the knowledge and consent of each. In such a case, in the absence of fraud, each was charged with the information acquired while acting for it. The test seems to be that if one principal would be charged with notice, were the agent acting solely for it and not for the other, it is charged with notice notwithstanding the dual relationship of the agent. Jacks v. Manning, Tex.Civ.App., 297 S.W. 588.

It was contemplated that Glover, as agent, should pass upon for plaintiff the withdrawals of the guardian. He did so. In doing so he was acting for plaintiff.

It is true, a principal is not charged with the knowledge of the agent when such agent is acting in fraud of his rights. Parkersburg Rig & Reel Co. v. Golden, Tex. Civ.App., 277 S.W. 1106; Texas Pacific Coal & Oil Co. v. Belcher, Tex.Civ.App., 265 S.W. 1081.

It was certainly the duty of Glover to investigate and supervise the le-

gality of the withdrawals by the guardian. This duty he owed primarily to the defendant. When these withdrawals were submitted to him by the defendant he owed the duty to plaintiff, as well as the defendant, to pass on same. He did pass on the withdrawals and, of course, knew of his failure to counter-sign the checks.

There is no evidence of any fraud on the part of Glover in his capacity as common agent. It might have been that he could and should have been more diligent in investigating the withdrawals, but, even so, this was the breach of a contractual duty. If he failed to keep his principal informed, this was likewise the breach of a contractual duty and not fraud. There is likewise no evidence of any concealment of the breach of the contract. The contract relied upon as constituting the cause of action is not an indemnity contract on the part of defendant. It amounted to simply an agreement to hold the trust funds in accordance with the contract between plaintiff and Solis. The evidence shows that at all times its agent had notice of this breach, for Glover had and retained in his custody the checks drawn by Solis. His purpose in holding same was to preserve for the benefit of plaintiff evidence of the disposition of the funds of the estate by Solis. Plaintiff had a vital interest in the accounting for the funds coming into the hands of the guardian. The defendant had no such interest.

A cause of action for the breach of a contract accrues on the date of the breach. In the case of Wichita National Bank v. United States Fidelity & Guaranty Co., Tex.Civ.App., 147 S.W.2d 295, it was held that knowledge of the breach on the part of the plaintiff was not essential. In this case the plaintiff did have notice of the various breaches of the contract, all of same occurring more than four years before the institution of plaintiff's suit. In our opinion, plaintiff's cause of action is barred by the four years' statute of limitations.

The evidence fails to show any notice on the part of defendant of or participation in the misapplication of the funds by the guardian. The ward was not a party to the counter-signature agreement. It was not her right to have this additional safeguard for the preservation of the funds of the estate. She gave no consideration therefor. In our opinion, the contract was not made for her bene-

fit, but was solely for the benefit and protection of the plaintiff. In the payment of any of the checks drawn by the guardian the evidence fails to show any breach of duty owed to the ward by the defendant. Such being the case, we hold there is no merit in the contention of plaintiff that, having paid the defaults of the guardian, it is entitled to recover against defendant by subrogation to the rights of the ward. As we have stated, defendant breached no duty it owed to the ward.

In our opinion, the two conclusions of law made by the trial court correctly announce the law applicable to the facts here involved.

The judgment is affirmed.