**Don DANVERS, Appellant,**

v.

**Mrs. Adele FROST et al., Appellees.**

**No. 3578.**

Court of Civil Appeals of Texas.

Eastland.

May 14, 1961.

Rehearing Denied June 21, 1961.

Kampmann & Kampmann, San Antonio, for appellant.

Trueheart, McMillan, Russell & Westbrook, Moursund, Ball & Bergstrom, San Antonio, for appellees.

WALTER, Justice.

Mrs. Adele Frost, joined by her husband, Jack Frost, filed suit against Don Danvers seeking cancellation of an earnest money contract between Mrs. Frost, as buyer, and ˙Don Danvers, as seller. The Frosts also sought recovery against Alamo Title Company of $10,000 cash which Mrs. Frost had ˌdeposited with Alamo as earnest money which had theretofore been.paid by Alamo to Danvers. Mrs. Frost sought this relief on the ground of disability of coverture. The title company answered and asked that it have judgment over against Danvers for any judgment Mrs. Frost obtained against it.

The court granted a summary judgment that the Frosts recover $10,000 from Alamo and such contract was cancelled. The court also granted a summary judgment in favor of Alamo on its cross action against Danvers for the $10,000 plus attorneys' fees.

Danvers has appealed, contending the court erred in granting the summary judgment because a material issue of fact existed as to whether or not the earnest money remained earnest money on the date appellant received notice of avoidance.or was in fact liquidated damages. Also, he contends the date appellant received notice of avoidance is a material issue of fact and further that Mrs. Frost is estopped to assert the defense of disability of coverture.

While Mr. Frost was out of the city, Mrs. Frost entered into a written contract with Danvers to purchase such property for $180,000 and deposited $10,000 with Alamo "as earnest money to bind the sale to purchase". Mrs. Frost informed the real estate agent that she thought Mr. Frost would sign the contract when he returned. The real estate agent had done some work for Mr. and Mrs. Frost in the past and in the contract Danvers agreed to pay him a commission of 5%. When Danvers was asked in his deposition, "Who did you deal with on the date of the contract?" he replied, "We had an agent, real estate agent by the name of William Jack Jackson." We think the agent would, therefore, be the agent for both parties. United States Fidelity & Guaranty Company v. San Diego State Bank, Tex.Civ.App., 155 S.W.2d 411; 2 Tex.Jur.2d, p. 694. When the agent returned the contract, Danvers said: "He came over and in a big flourish he threw it on the desk and says, 'Here is your deal; it is signed, sealed and delivered, and here

is the check.' And then only did we find out that it was only partly executed." The day after he entered into the contract with Mrs. Frost, Danvers called the owner of the property and informed him he was exercising his option to purchase said property and instructed him "to prepare the title and put it in the name of Jack Frost". After Mr. Frost refused to sign the contract, Danvers, through his agent, submitted the property to Mr. Frost for $150,000 and Mr. Frost informed them he was not interested in the property at any price.

■ Mrs. Frost's contract was executed on April 10, 1957, and under certain conditions the transaction was to be closed within 30 days. After all negotiations to sell the property to Mr. Frost failed, Danvers drew down the $10,000 earnest money from Alamo on May 20, 1957, and gave them a letter of indemnity.

Appellant first contends that a genuine issue of a material fact existed as to whether or not the $10,000 deposited with Alamo as earnest money remained earnest money on the date he received notice of avoidance or was, in fact, liquidated damages. Danvers' position is that the earnest money lost its character as such and was transmuted into liquidated damages when he drew it down on May 20, 1957. He contends the $10,000 constitutes payment on the contract and that a married woman cannot disaffirm the executed portion of her contract. The parties' agent testified that he informed Danvers that the deal was not going through about one week after the contract was signed. Danvers contends he had no notice that Mrs. Frost would not perform under her contract until May 19, 1957, which was the day before he drew the money down from Alamo.

The appellant relies principally upon Pitts v. Elser, 1894, 87 Tex. 347, 28 S.W. 518. In the Pitts case the married woman, without the joinder of her husband, purchased a stock of merchandise and made a down payment in cash, the balance to be paid on delivery. She pleaded her cover-

ture and declined to proceed with the deal and sued to recover the money she had paid. On a certified question the Supreme Court said: "We answer that, under the facts stated, a married woman cannot, solely on account of her coverture, recover the payment made." In the Pitts case, all of the preliminary negotiation for the sale had been completed and the merchandise had become the property of the married woman when she made the cash payment. This was clearly a payment made on an executed contract. The court in Rutherford et al. v. Alamo Abstract & Title Company et al., Tex.Civ.App., 185 S.W.2d 498, 499 (Writ Dis.), held that the rule announced in the Pitts v. Elser case did not apply to money merely placed with a stakeholder as earnest money and said: "The contract being voidable at the option of the wife, when she elects to set up her coverture and avoid such contract, then and in that event each and every stipulation in the contract becomes unenforceable."

The liquidated damage provision of the Frost contract is as follows: "Upon failure of the purchaser to comply with the terms of this contract for any reason except title defects, the seller may, and at the option of the agent herein shall, retain this earnest money as liquidated damages for breach of contract, one-half to be retained by the seller and one-half (But not exceeding agent's regular commission) to be paid to the agent herein, or specific performance may be enforced."

Mrs. Frost made no voluntary payment on her real estate purchase. All of the provisions of her contract were voidable and she exercised her right to avoid it on the ground of disability of coverture at a time when the $10,000 retained its character as earnest money.

We find no merit in Danvers' contention that Mrs. Frost was estopped to assert the defense of disability of coverture. When Mrs. Frost's contract was returned to him, Danvers knew he was dealing with a married woman whose contract was voidable.

After reducing the price of his property from $180,000 to $150,000, Danvers failed to induce Mr. Frost to sign the contract. Both parties cite the case of Barnes v. Archer, Tex.Civ.App., 77 S.W.2d 883, 884, wherein the court said: "It is now well settled in this state that a married woman is subject to the rules of estoppel by fraud, upon the principle, as so well stated by Judge Speer in his excellent work upon the Law of Marital Rights in Texas, 'that if she is guilty of any positive act of fraud, or of an act of concealment or suppression which in law would be equivalent thereto, which act, representation, or concealment was intended to cause another to alter his position or condition, and her act has such effect, she is bound thereby, whether her act or representation be in keeping with truth or contrary thereto.'" Danvers contends that the fraud and acts of concealment of Mrs. Frost caused him to materially change his position in that he exercised his option to purchase the property in question for $150,000 and discontinued his efforts to have the property rezoned. We hold that Mrs. Frost is not estopped to plead her disability of coverture. Danvers exercised his option to purchase the property after Mrs. Frost had signed the contract without the joinder of her husband. Danvers knew she was a married woman whose contract was voidable and knew "the contract was only partly executed", and that it was an executory contract. No fraud or concealment of any fact on the part of Mrs. Frost induced Danvers to exercise his option and instruct the owners of the property "to prepare the title and put it in the name of Jack Frost", or to discontinue his efforts to rezone the property. We have considered all of appellant's points and find no merit in them. They are overruled.

Judgment affirmed.