William J. MATTHIESSEN; Paul G. Silber, Jr.; Jack N. Pitluk; Robert P. Billa; and, Bernard L. Lifshutz, Appellants,

v.

John M. SCHAEFER, Appellee.

No. 04–93–00602–CV.

Court of Appeals of Texas, San Antonio.

April 26, 1995.

Rehearing Overruled July 5, 1995.

Earle Cobb, Jr., Thomas H. Crofts, Jr., Crofts, Callaway & Jefferson, P.C., San Antonio, for appellants.

Robert W. Loree, Law Office of Robert W. Loree, San Antonio, for appellee.

Before LOPEZ, HARDBERGER and DUNCAN, JJ.

HARDBERGER, Justice.

On motion for rehearing, our opinion of December 28, 1994, is withdrawn, and the following is now the opinion of the Court.

This case concerns the sale of real property. The trial court entered judgment for rescission and restoration of consideration upon a jury verdict against appellants William J. Matthiessen, Paul G. Silber, Jr., Robert P. Billa, Jack N. Pitluk and Bernard E. Lifschutz, jointly and severally, and in favor of appellee, John M. Schaefer. We reverse and remand.

### Facts

Appellants Matthiessen, Silber, Billa, Pitluk and Lifschutz each owned an undivided one-fifth ($\frac{1}{5}$) interest in the Ashley Road property which is a 27.043 acre tract of land located in southeast San Antonio, Texas. In 1985, Schaefer learned that the property was for sale from an advertisement published by the Guy Chipman Company describing the property as a "Good multi-family site." Acting as trustee for appellants, John R. Shaw signed an earnest money contract on November 11, 1985, agreeing on their behalf to sell the Ashley Road property to "Schaefer Properties." The earnest money contract dated November 11, 1985, contained the following provision:

6. *Survey:* Within thirty (30) days of the Deposit Date *Seller shall furnish,* at no cost to Buyer, a staked on-the-ground survey ("Survey") of the Property dated after the date of this Contract prepared by a licensed Texas engineer. *The survey ... shall show the 100 year flood level of any creek or stream which could flood the Property* according to the records, maps and information of the U.S. Army Corps of Engineers, Bexar County, and the City of /San Antonio. *The surveyor shall certify to Buyer ...* that the total area contained within the boundary lines of such Property is a specified number of acres; *that a specified number of acres within the Property is situated above the 100 year flood level of any creeks or streams capable of flooding the Property* according to the records of the U.S. Army Corps of Engineers, Bexar County, and the City of San Antonio; and that the plat is a true, correct and accurate representation of the Property.

(Emphasis added).

In order to comply with the earnest money contract, appellants hired and paid Pape–Dawson to prepare the survey. Thereafter, three different surveys were prepared. The third survey indicated the approximate limits of the 100 year flood plain. The parties closed, on May 9, 1986, for a purchase price of $402,603.50.

At the time of closing, Schaefer paid $59,947.18 down and executed a promissory note payable to the sellers in the amount of $342,317.52 and executed a deed of trust to their trustee. Schaefer's promissory note provided for annual interest payments in 1987 and 1988 and for maturity of the entire balance in 1989. Schaefer made the initial payment of $41,078.10.

In January of 1989 Schaefer was preparing to build apartments on the Ashley Road property when he was advised by the Department of Housing and Urban Development to check the Federal Emergency Management Agency ("FEMA") flood plain map. The approximate limits of the 100 year flood plain in appellants' third survey is almost identical to what is labeled Zone A on the FEMA map. The FEMA map also includes another flood zone labelled Zone B which is defined as follows:

Areas between limits of the 100–year flood and 500–year flood; or certain areas subject to 100–year flooding with average depths less than one (1) foot or where the contributing drainage area is less than one square mile; or areas protected by levees from the base flood.

Schaefer contends that when Zone B is taken into consideration, an additional 13.9 acres of the property lies within the 100 year flood zone.

Based on a default in the note payment, the appellants, through their trustee, gave notice of default, acceleration, and foreclosure of the deed of trust on February 6, 1989. The deed of trust was foreclosed and was purchased at the sale by the appellants for $240,000. Thus, $158,414.32 was left owing on the note.

Appellants brought this suit for the deficiency on January 31, 1990. Schaefer answered the suit alleging defenses including failure of consideration, mutual mistake and fraud. Schaefer filed his initial counterclaim on November 21, 1990, alleging violations of the Texas Deceptive Trade Practices & Consumer Protection Act (hereafter "DTPA"), negligent misrepresentation and breach of contract on the same transaction. The case was tried to a jury which returned a favorable verdict for Schaefer. Judgment was entered upon the verdict from which appellants bring this appeal.

### Parties to the Contract

Appellants' first point of error complains that the trial court erred in basing its judgment on the jury's answer to question one, concerning failure to comply with the earnest money contract, because (a) John Schaefer was not a party to the contract; (b) all contractual obligations merged in the conveyance; and (c) noncompliance would provide no basis for rescission.

Appellant's argument is that John Schaefer is the wrong party. According to appellants, "Schaefer Properties" would be the proper party to bring a suit against them for breach of the earnest money contract

because Schaefer Properties was the party to the November 11, 1985, earnest money contract. Appellants were required to raise this issue in a verified denial. TEX.R.CIV.P. 93(2). Assertions that the cause of action brought by the plaintiff is owned by another party must be raised by a verified denial. *Pledger v. Schoellkopf,* 762 S.W.2d 145, 146 (Tex. 1988); *Beacon Nat. Ins. Co. v. Reynolds,* 799 S.W.2d 390, 395 (Tex.App.—Ft. Worth 1990, writ denied). Appellants first raised this argument in their amended motion for new trial. In fact, appellants' proposed jury question one concerning breach of the earnest money contract identifies John Schaefer as one of the parties to that agreement. Appellants failed to raise this issue in a verified denial and therefore have waived it. We overrule appellants' first point of error.

### Pape–Dawson's Agency Status

In their second point of error, appellants complain that the trial court erred in rendering judgment denying them a recovery on the note and awarding Schaefer rescission and damages, or in not ordering a new trial, because the evidence is legally or factually insufficient to support a finding that Pape–Dawson Engineers was an agent of appellants. We address only the legal insufficiency point.

This point of error involves jury issues four, five and six.[1] In response to those issues, the jury found that either appellants or their agents had engaged in false, misleading, or deceptive acts or practices which damaged Schaefer. It is appellants' position that the evidence established, as a matter of law, that Pape–Dawson was an independent contractor and thus there is legally insufficient evidence to support the jury's answers to issues four, five and six.

In reviewing legally insufficient evidence points, the reviewing court considers only the evidence and inferences that tend to support the finding, and disregards all evidence and inferences to the contrary. *Lewelling v. Lewelling,* 796 S.W.2d 164, 166 (Tex.1990); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate,* 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex. 1987); Hall, *Revisiting Standards of Review in Civil Appeals,* 24 ST. MARY'S L.J. 1045 (1993).

---

1. Jury issues four, five and six are set forth below:

*Question No. 4:*

Did Plaintiffs, or their agents, engage in any false, misleading, or deceptive act or practice that was a producing cause of damages to John Schaefer?

[Definition of producing cause]

"False, misleading, or deceptive act or practice means any of the following:

1. Representing that the Ashley Road property had or would have characteristics that it did not have; or

2. Representing that the Ashley Road property will be of a particular quality if it was of another; or

3. Representing that the Earnest Money Contract and the survey in controversy for the sale of the Ashley Road property conferred or involved rights or obligations which it did not have.

*Answer: Yes.*

*Question No. 5:*

Did Plaintiffs or their agents engage in any unconscionable action or course of action that was a producing cause of damages to John Schaefer?

[Definition of producing cause]

An "unconscionable action or course of action" is an act or practice that, to a person's detriment, results in a gross disparity between value received and consideration paid in a transaction involving transfer of consideration.

*Answer: Yes.*

*Question No. 6:*

Did Plaintiffs, or their agents, make a negligent misrepresentation on which John Schaefer justifiably relied?

Negligent misrepresentation occurs when—

a. a party, or his agent, makes a representation in the course of his business or in a transaction in which he has a monetary interest;

b. the representation supplies false information for the guidance of others in their business; and

c. the party, or his agent, making the representation did not exercise reasonable care or competence in obtaining or communicating the information.

*Answer: Yes.*

In this case there is some evidence that Pape–Dawson was appellants' agent. Schaefer's attorney at the time of the transaction, Ryland Howard, testified that Pape–Dawson was appellants' agent. Furthermore, appellants were directly responsible for and contractually obligated to provide a survey and to certify the area outside the 100 year flood level for the Ashley Road Property. While not preparing it, the appellants provided the survey to Schaefer. The survey in question failed to disclose Zone B. Therefore, there is some evidence that appellants are liable both directly and through their agents. Appellants' second point of error concerning legal insufficiency is overruled.

## Misrepresentation of the 100–year Flood Level

In points of error three through eight, appellants complain that there is legally and factually insufficient evidence to support the jury's answers to questions one, four, five and six. Specifically, appellants complain that there is no evidence that the survey misrepresented the 100–year flood level. We address only the legal insufficiency points. The legal standard applicable is set forth in the preceding section.

Appellants' argue Zone B of the FEMA map is defined as an area protected by levee, or capable of flooding once every 100 years up to one foot, or flooding once between every 100 and 500 years. According to appellants, there is no evidence which of those three definitions apply to the Ashley Road property. Therefore, there is no evidence supporting the jury's findings that appellants engaged in false, misleading or deceptive acts. We are unpersuaded by this argument.

Harry Jewett, a civil engineer, testified on behalf of appellee as an expert witness that the survey required by the earnest money contract should have included the area of land designated as Zone B in the FEMA map. According to Jewett, the survey provided by appellants' was not in compliance with the terms of the contract. Zone B on the FEMA map is defined as an area capable of flooding every 100 years up to one foot. Despite appellants argument to the contrary, there is evidence that the jury was entitled to believe that the area designated as Zone B on the FEMA map was capable of flooding every 100 years. This was sufficient factual support on which Harry Jewett could base his opinion that Zone B should have been contained in the survey. Appellants were free to dispute this understanding of Zone B. In fact, they made the identical argument to the jury. The jury did not agree with appellants' argument and we are not free to disturb the jury's decision under these circumstances. *See Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 28 (Tex.1993). We overrule appellants' points of error three through eight as they pertain to the legal insufficiency challenges.

## Statute of Limitations

In points of error ten and eleven, appellants contend that the trial court erred in rendering judgment that Schaefer recover on his counterclaim because (1) the evidence conclusively establishes that Schaefer filed his counterclaim more than four years after the action accrued and more than thirty days after plaintiffs filed suit; (2) there is no finding that limitations was tolled by nondiscovery; and, (3) because the trial court erred in omitting the "should have discovered" element from the issue.

Schaefer received the survey prior to closing. The closing occurred on May 9, 1986, before which any misrepresentation necessarily occurred. Schaefer testified that he did not learn of any misrepresentation until sometime in January or February of 1989. Appellants filed suit on January 31, 1990. Schaefer filed his counterclaim on November 21, 1990. The counterclaim savings statute is inapplicable because Schaefer filed his counterclaim more than thirty days after suit was filed. *See* TEX.CIV.PRAC. & REM. CODE, sec. 16.069. Schaefer's counterclaim alleged claims for breach of contract, deceptive trade practices, and negligent misrepresentation. Schaefer's breach of contract claim was barred four years after it accrued. TEX.CIV.PRAC. & REM.CODE § 16.004 (Vernon 1986). Absent an allegation of fraudulent concealment, a cause of action for breach of contract accrued on the date of the alleged breach. *United States Fid. & Guar. Co. v.*

*San Diego State Bank,* 155 S.W.2d 411, 414 (Tex.Civ.App.—El Paso 1941, writ ref'd). Not having alleged fraudulent concealment, Schaefer's contract claim accrued, at the latest, on the date of closing and was, therefore, barred at least by May 9, 1990—before Schaefer filed suit on November 21, 1990.

Schaefer's remaining claims for deceptive trade practices and negligent misrepresentation are governed by the two-year statute of limitations. TEX.BUS. & COM.CODE § 17.565 (Vernon 1987); *Texas American Corp. v. Woodbridge,* 809 S.W.2d 299 (Tex.App.—Fort Worth 1991, writ denied). The accrual of these claims, however, depends upon a proper application of the discovery rule. Accordingly, Schaefer had the burden of obtaining a finding that he did not discover and should not have discovered the basis for his counterclaim until a time within the limitations period. *See Willis v. Maverick,* 760 S.W.2d 642, 646–47 (Tex.1988).

Schaefer submitted a proposed question which asked the jury to decide the date that he discovered the alleged misrepresentation. The trial court did not submit Schaefer's proposed discovery question. Appellants tendered the following question concerning the discovery rule:

QUESTION NO. 2B

Should John Schaefer have discovered the existence of Zone B which affects the Ashley Road property:

A. Before November 21, 1986?
   Answer "Yes" or "No."        Answer:_____
B. Before November 21, 1987?
   Answer "Yes" or "No."        Answer:_____

The trial court submitted the following question which the jury, answered as indicated:

QUESTION NO. 3

Did John Schaefer discover the existence of Zone B which affects the Ashley Road property:

A. Before November 21, 1986?

*Answer:* No.

B. Before November 21, 1988?

*Answer:* No.

Neither the appellants' "should John Schaefer have discovered", nor the actual issue given by the trial court "did John Schaefer discover" was correct. This is true because both had to be asked. As was previ-ously pointed out, under *Willis v. Maverick,* Schaefer had the burden to plead, prove, and submit a question that would establish that he neither discovered nor should he have discovered his injury prior to November 21, 1988—two years prior to the filing of his lawsuit. Question No. 3 does not do this, nor does anything else in the charge. The question then is: did the appellants preserve the error and their right to a remand for the error in failing to include "should have known"?

This is a close question and an evolving area of the law. Texas Rules of Civil Procedure 278 says in part:

" . . . Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment."

This was not done by the appellants. Nor did the appellants object to the question that was submitted by the trial court. A party without the burden of proof, like the appellants, may preserve error—and the right to a remand—by request; an objection is not required. *Morris v. Holt,* 714 S.W.2d 311, 312 (Tex.1986). The common sense underpinning of this law is whether the complaining party put the trial judge on notice sufficiently clearly that the Court could have reacted in a timely fashion.

This question can only be answered today by the Supreme Court case of *State Dept. of Highways v. Payne,* 838 S.W.2d 235 (Tex. 1992). This case simplified and loosened the prevailing view of the necessity of precise objections to preserve charge error.

"The preparation of the jury charge, coming as it ordinarily does at that very difficult point of the trial between the close of the evidence and summation, ought to be simpler. To complicate this process with complex, intricate, sometimes contradictory, unpredictable rules, just when counsel is contemplating the last words he or she will say to the jury, hardly subserves the fair and just presentation of the case . . .

"There should be but one test for determining if a party has preserved error in

the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling."

*Payne,* 838 S.W.2d at 240–241.

■ In an issue similar to the instant case *Payne* held that the appellants had put the trial court on notice of its error by a proposed question even though it was wrong.

"The issue is not whether the trial court should have asked the jury the specific question requested by the State; rather, the issue is whether the State's request called the trial court's attention to the State's complaint that no premise liability theory was submitted to the jury sufficiently to preserve that complaint for appeal. The State's requested question clearly called the trial court's attention to the State's complaint because it was the sole element of premise defect liability missing from the charge.... The request not only objects to the omission of the theory, it suggests the missing language necessary to correct the omission."

*Payne,* 838 S.W.2d at 239–240.

The same language could be applied to the instant case with a substitution of the "should have discovered" phrase. The appellants' requested Question 2B—one of only three questions requested by the appellants—meet the Payne test and control this appeal.

Appellants have brought forth several other points of error, but in light of this opinion on rehearing it is not necessary to reach them. Following the dictates of *Spencer v. Eagle Star Ins. Co. of America,* 876 S.W.2d 154, 158 (Tex.1994), and in accordance with the above reasoning, we reverse and remand.