Affirmed and Opinion filed January 9, 2003









Affirmed and Opinion filed January 9, 2003.

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.  14-01-00967-CV

____________

 

CHCA EAST HOUSTON, L.P. d/b/a EAST HOUSTON REGIONAL MEDICAL
CENTER, Appellant

 

V.

 

BILL HENDERSON, D.D.S., Appellee

 



 

On
Appeal from the County Civil Court at Law No. 4

Harris County, Texas

Trial
Court Cause No. 713, 337

 



 

O
P I N I O N

This
relatively simple case raises relatively complex problems.  For many years, appellee
Bill Henderson has occupied a dental office in a professional building in east
Houston.  Although the lease he signed in
1991 expired in 1994, he continued under the terms of that lease on a
month-to-month basis.  For several months
in 1996, he admits he paid no rent due to hip and knee problems.  In September 1996, he signed a new lease, and
it is undisputed he has not missed any rental payments since.








But
the parties disagree whether he is current. 
Appellant, CHCA East Houston, L.P. d/b/a East Houston Regional Medical
Center (AEast
Houston@),
applied some of the payments made after October 1996 to rents allegedly due
under the first lease, thus leaving a shortfall of $10,872 under the
second.  See W. E. Grace Mfg. Co. v.
Levin, 506 S.W.2d 580, 585 (Tex. 1974) (holding that unless debtor
specifically directs payment, creditor may apply payments to any valid claim
against debtor).  Henderson objected to
this offset, asserting East Houston had no assignment or other authority to
collect rent under the first lease or apply payments to it.  After a bench trial, the trial court agreed.

I.  Motion to Dismiss Appeal

At
the outset, Henderson argues we must dismiss this appeal because appellant East
Houston was not a party to the trial court=s judgment.  The suit
below was filed by, and judgment was entered against, Sunbelt Regional Medical
Center, Inc. d/b/a East Houston Regional Medical Center (ASunbelt,
Inc.@).  At trial, documents were introduced showing
that Sunbelt, Inc. sold
and assigned all its assets (including Henderson=s account receivable) to East Houston
in a series of transactions on February 29, 2000.

An
assignee, though not a party below, may file an appeal in its own name.  See Motor Vehicle Bd. of Tex. Dept. of Transp. v. El Paso Indep. Auto.
Dealers Ass=n, Inc., 1
S.W.3d 108, 110 (Tex. 1999) (discussing doctrine of virtual
representation).  Accordingly, we hold
East Houston as assignee of the plaintiff below may appeal.  We deny Henderson=s
motion to dismiss and his related claim for damages for a frivolous appeal.

II.  Standing, Capacity, or Something Else?








 Henderson=s primary defense at trial was that Sunbelt, Inc. (the
plaintiff below, and East Houston=s assignor) was not a party to the first lease, and had no
assignment or other authority to apply payments to it.  Because he objects that Sunbelt, Inc. was not a proper party
(rather than merely improperly named), the allegation is one of
misidentification.  See Enserch Corp.
v. Parker, 794 S.W.2d 2, 4-5 (Tex. 1990) (distinguishing between Amisnomer@ cases involving correct party
incorrectly named, and Amisidentification@ cases involving incorrect party).  But there appears to
be some doubt whether misidentification raises a question of standing,
capacity, or something else.  The answer
is critical, as it determines the time and manner of raising an objection.

The
trial court treated the question as one of standing, concluding that Sunbelt,
Inc. had no standing to
enforce the first lease.  Standing
focuses on whether the plaintiff has a sufficient personal stake in a
controversy.  See Nootsie,
Ltd.  v. Williamson County Appraisal
District, 925 S.W.2d 659, 661 (Tex. 1996). 
As a component of subject-matter jurisdiction, it cannot be waived, and
may be asserted for the first time on appeal. 
Id. at 662. 

Several
appellate courts, however, have treated misidentification of a contract party
as a question of capacity.  For example,
our colleagues downstairs have held that a complaint that the plaintiff was not
the successor-in-interest of the original landlord was one of capacity.  See Nine Greenway Ltd. v. Heard, Goggan, et al., 875 S.W.2d 784, 787 (Tex. App.CHouston
[1st Dist.] 1994, writ denied).[1]  Capacity focuses on whether a party has the
legal ability to sue.  See Nootsie, 925 S.W.2d at 661.  It must be raised by verified objection.  See Tex.
R. Civ. P. 93(2).








Alternatively,
this Court and others have allowed litigants to treat misidentification as a Adefect
of parties.@  See Enserch Corp.,
794 S.W.2d at 6 (calling error as to true defendant among affiliated corporations
a Adefect
in the parties@); Wiggins v. Overstreet, 962 S.W.2d 198, 200 (Tex. App.CHouston
[14th Dist.] 1998, pet. denied) (affirming defect-of-parties objection that proper party was not individual but company bearing his name).  Generally, a Adefect of parties@ refers to joinder problems involving
necessary or indispensable parties.  See,
e.g., Allison v. National Union Fire Ins. Co. of Pittsburgh, Pa., 703
S.W.2d 637, 638 (Tex. 1986).  It too must
be raised by verified objection.  See Tex. R. Civ. P. 93(4).

Finally,
at least one court has held that misidentification among affiliated
corporations is not a matter of capacity or standing, but simply part of
the facts to be proved at trial.  See Trailways, Inc. v. Clark, 794 S.W.2d 479, 490-91 (Tex.
App.CCorpus
Christi 1990, writ denied).  If that is
correct, an objection at trial should be sufficient.  See Tex.
R. App. P. 33.1.

For
several reasons, we agree with the majority of courts that misidentification among affiliated corporations or
successors-in-interest is an issue that must be raised by verified pleading.  First, treating it as a standing
complaint risks substantial waste, as standing may be raised long after the
trial is over.[2]  Additionally, in many cases (including this
one) deciding who should pay whom on a contract goes to the heart of the
merits, while standing is generally a question of law determined by the court
from the pleadings.  See Texas Natural
Resource Conservation Com=n v. IT‑Davy, 74 S.W.3d 849, 855 (Tex. 2002);
Texas Ass=n of Business v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).[3]









Conversely, treating misidentification as a matter that need
only be raised by an objection at trial creates other problems.  Rental properties often change hands, and the
ownership structure may confuse even those who manage the property (as it did
in this case).  Additionally, a complete
stranger to the property is unlikely to have copies of the lease or enough
knowledge of rental payments to bring a suit like this one.  If misidentification of the owner can be
raised for the first time at trial, it may encourage the kind of
reclining-behind-fallen-timber that led courts to toll limitations in cases
involving misidentified but related entities.[4]

By contrast, treating misidentification as an issue that must
be raised by verified pleading (whether labeled Acapacity@ or Adefect of parties@) limits proof of a landlord=s genealogy to those cases in which a
party has some reason to doubt the lineage. 
It also is parallel to the treatment accorded the closely-related
problem of suits brought by or against parties under an assumed name.  See Tex.
R. Civ. P. 28, 93(14). 

Admittedly,
there is some stretching required to fit misidentification within any of the
provisions of Rule 93. 
Successors-in-interest or affiliated corporations are different parties,
not different Acapacities@ of one another.  And the
only Adefect
of parties@ is an allegation that one of them should be dismissed.  But the Texas Supreme Court has approved the
application of Rule 93 to other situations involving confusion among parties
that are separate entities.  See Pledger v. Schoellkopf, 762
S.W.2d 145, 146 (Tex. 1988) (holding complaint that action belonged to
corporation rather than shareholder was waived by failure to file sworn
objection to capacity).  Accordingly, we agree with those courts that
have held misidentification (at least among affiliated corporations or
successors-in-interest)[5]
is not an issue of standing, but an issue that must be raised by verified
pleading.  








In this case, Sunbelt, Inc. asserted that payments under the
second lease could be applied to the first. 
Assuming that pleading to be true, then payments on the second lease
were short by $10,872.  That may not be a
large injury, but for purposes of standing, it suffices.  Thus, we sustain Sunbelt, Inc.=s third point of error challenging
the trial court=s conclusion that it had no standing. 

Nevertheless, an erroneous conclusion of law does not require
reversal if the trial court rendered the proper judgment.  See BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  To that analysis we
next turn.

III.  Who is the Landlord?

In
its remaining points of error, East Houston challenges the legal and factual
sufficiency of the trial court=s findings and conclusions that Sunbelt, Inc. had no right to
apply payments made after execution of the second lease to amounts due under
the first.  Because Henderson filed a verified pleading
objecting on this basis, Sunbelt, Inc. was required to prove its entitlement
to offset payments against the first lease. 
The trial court=s findings are reviewable under the
usual legal and factual sufficiency standards. 
See Catalina v. Blasdel, 881 S.W.2d
295, 297 (Tex. 1994).

The
first lease shows the lessor as AHealthTrust,
Inc. - The Hospital Company, a Delaware Corporation with respect to Sun Belt
Regional Medical Center,@ and was signed (in illegible handwriting) on behalf of ASunbelt Regional Medical Center,@ with no AInc.@ or other indication of what the
latter entity is.  The second lease shows the lessor as AColumbia East Houston Medical Center,@
and was signed (in different but still illegible handwriting) on behalf of AColumbia
East Houston Med. Ctr.@  Henderson correctly
points out that Sunbelt, Inc. is not the lessor on
either lease, nor was there evidence of any assignment from either lessor to it.








Sunbelt,
Inc. relies on the definition of ALandlord@ in the first lease as Athe owner of the building,@ and argues that various documents show that it was the
referenced owner (even though the lease lists someone else).  The premises in the first lease is described
as the Asecond floor of Sun Belt Regional
Medical Center Professional Building@; the second lease describes the
premises as A13111 I-10 East Frwy.@ 
Several other documents were admitted, but none are sufficient to
connect Sunbelt, Inc. to either of these premises:

$                  
The Deeds.  In 1988, HCA Health Services of
Texas, Inc. deeded property (described by metes and bounds) to Sunbelt,
Inc.  On March 1, 2000, Sunbelt, Inc.
deeded property (described by reference to recorded plats) to East Houston.  While these deeds transfer some property,
they do not show that either was Henderson=s leased premises.  There simply was no evidence tying these
varying descriptions together.

$                  
The Master Lease.  On July 1, 2000, East Houston
executed a master lease concerning property (again described by metes and
bounds) at 13111 East Freeway.  To our
untrained eyes, the description does not match the metes and bounds in the 1988
deed to Sunbelt, Inc., and East Houston presented no testimony from those with
better-trained eyes.  Additionally, as
East Houston only sought rent through June 2000, any connection the master
lease makes between East Houston and the property comes only after the period
relevant to this suit.

$                  
The Tax Statements.  While tax statements were introduced
directed to ASunbelt Regional Hospital@ (for years 1991, 1993, and 1994),
and to ASunbelt Regional Hospital HCA /
Healthcare Serv of TX@ (for years 1995 and 1996), none show
Sunbelt, Inc. as owner, or connect it to the deeds or leases.

$                  
The
Monthly Statements.  All of Henderson=s
monthly statements came from and required payment to AHealthcare
Realty Management@ or AHealthcare Realty Services.@  They show no connection
to Sunbelt, Inc.








To
say the least, these documents do not establishCeither as a matter of law or by the overwhelming evidenceCthat
Sunbelt, Inc. was entitled to apply payments to the first lease.  To the extent there was any ambiguity on the
point, we cannot substitute our judgment for that of the trial judge.  Accordingly, we overrule Sunbelt, Inc.=s
remaining points.[6]


                                                     IV.  Henderson=s
Cross-Points

In
several cross-points, Henderson raises various defensive issues, all but one of
which are rendered moot by our disposition of Sunbelt, Inc.=s
points.  But in his fifth cross-point,
Henderson asserts entitlement to attorney=s fees as the prevailing party under the lease.  However, as he did not file a notice of
appeal, we may not grant him more favorable relief than the trial court
did.  See Tex. R. App. P. 25.1(c); 
Lubbock County, Texas v. Trammel's Lubbock Bail Bonds, 80 S.W.3d
580, 584 (Tex. 2002).  Therefore, we
overrule Henderson=s fifth cross-point.

We affirm the judgment of the trial court.

 

 

 

 

/s/        Scott
Brister

Chief Justice

 

 

Judgment rendered and Opinion filed
January 9, 2003.

Panel consists of Chief Justice Brister and Justices Hudson and Fowler.

 











[1]  See also Matthiessen v. Schaefer, 900 S.W.2d 792, 794-95 (Tex.
App.CSan Antonio 1995, writ denied) (holding complaint
that AJohn Schaeffer@
could not bring counterclaim on earnest money contract signed by ASchaefer
Properties@ was waived by failure to file Rule 93(2) objection);
Beacon Nat. Ins. Co. v. Reynolds, 799 S.W.2d 390, 395 (Tex. App.CFort
Worth 1990, writ denied) (holding
complaint that policy had been issued by an affiliate of
same insurance group was waived by failure
to file Rule 93(2) objection).





[2]  See Nootsie v. Williamson County Appraisal District, 925
SW2d 659, 662 (Tex 1996).  For example,
in this case Henderson=s trial pleadings did not challenge whether Sunbelt,
Inc. could enforce the second lease, but he does make that assertion on
appeal.  If the question is one of standing,
this is perfectly proper, even though it was not the focus of the trial and
raises serious questions about Henderson=s status
as a tenant.  See Air‑Ag, Inc.
v. F & H Santa Fe Rail, Inc., 22 S.W.3d 596, 598-99, (Tex. App.CFort Worth 2000, no pet. h.) (stating that tenant
generally cannot dispute landlord=s title,
as its own tenancy depends upon it).





[3]  A review of
standing is not limited to the pleadings when a plaintiff is required to prove
facts that are Aprimarily jurisdictional,@ as when a plaintiff organization attempts to
establish associational standing.  See
Bland Independent School Dist. v. Blue, 34 S.W.3d 547, 554-55 (Tex.
2000).  But a different rule must apply
when the dispute goes to the merits of a claim; otherwise, the trier-of-fact=s
conclusion that there was no standing would destroy its subject-matter jurisdiction
to make that conclusion on the merits.





[4]  See, e.g., Chilkewitz v. Hyson, 22 S.W.3d 825, 830 (Tex.
1999); Bailey v. Vanscot Concrete Co., 894
S.W.2d 757, 761 (Tex. 1995).





[5]  Different
considerations may apply when a complete stranger to a contract is sued.  See e.g., Miles v. Plumbing Services
of Houston, Inc., 668 S.W.2d 509, 512-13 (Tex. App.CHouston
[14th Dist.] 1984, writ ref=d
n.r.e.) (holding homeowners=
objection that they had no contract with subcontractor was not a capacity
question that had to be raised by verified pleading); compare Enserch Corp.
v. Parker, 794 S.W.2d 2, 4 (Tex. 1990) (tolling limitations when entities
were related) with Matthews Trucking Co., Inc. v. Smith, 682 S.W.2d 237,
239 (Tex. 1984) (holding limitations was not tolled when entity served was
unrelated to trucking company involved in accident). 





[6]  Although not
relied upon by the trial court in her findings, Henderson also defended based
on testimony that a representative of East Houston said Henderson would not
have to pay any rent due under the first lease if he executed the second
lease.  We agree with Sunbelt, Inc. that
such testimony is barred by the parol evidence rule
to the extent it seeks to vary the terms of the second lease.  See Marburger v.
Seminole Pipeline Co., 957 S.W.2d 82, 86 (Tex. App.CHouston [14th Dist.] 1997, pet. denied).  It might constitute fraudulent inducement,
but Henderson did not plead such a defense. 
See id.; Tex.  R. 
Civ.  P.  94. 
Of course, the landlord under the first lease could waive past due rent
at its option without violating the parol evidence
rule.  But for that to be the case,
Henderson would have to concede that East Houston=s agent
had authority to act under both the first and second leases, which of course he
vigorously denies.